**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC., *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:17-cv-1782-RLM-TAB |
| RAINBOW REALTY GROUP, INC., *et al.*, | |
| Defendants. | |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE
THIRD AMENDED CLASS ACTION COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiffs respectfully move for leave to file a Third Amended Class Action Complaint ("Third Am. Compl.") to add two named plaintiffs and putative class representatives and six entities closely related to the current Defendants as defendants.[1] Plaintiffs request entry of the Complaint attached to this Motion as Exhibit 1. A redline identifying the changes made from the Second Amended Class Action Complaint [Doc. No. 55] is attached as Exhibit 2.

*First*, Plaintiffs move to join Shore Waters Development, LLC ("Shore Waters") and Sporting Trust, Sunshine Trust, Sunflower Trust, Redskins Trust, and Alley Cat Trust (the "Owner Trusts") (collectively, the "Owner Entities") as defendants. The Owner Entities are part of a joint enterprise to run the rent-to-own scheme challenged in this case with current Defendants Rainbow Realty Group, Inc. (a real estate company owned and controlled by

---

[1] In addition, Plaintiffs have removed the allegations of former plaintiffs Nelly Espinoza and Marvin Martinez (who settled their individual claims with Defendants) and updated three miscellaneous factual allegations to conform with information obtained in discovery.

Defendant James Hotka that is the public face of the rent-to-own program); Empire Holding

Corporation (an entity created and controlled by Mr. Hotka for purposes of purchasing properties

for the program); and Mr. Hotka himself. Based on newly-obtained discovery, Plaintiffs learned

in October 2018 of the integral role of the Owner Entities in this enterprise. The Owner Entities

were each established for the sole purpose of effectuating the current Defendants' predatory rent-

to-own scheme at issue in this case—and the current Defendants continue to use them for that

exclusive purpose. Specifically, the Owner Entities hold the ownership interests for all of the

houses in the Indianapolis area offered by Defendants in the challenged rent-to-own program

(referred to as "Rainbow houses"). Their interests include claiming profits, assets, and

depreciation related to the Rainbow houses, funding Rainbow's operations, and distributing

proceeds from the rent-to-own scheme to Defendant Hotka and his four children.

Although Plaintiffs were aware of the interconnected role of Rainbow Realty, Empire,

and Mr. Hotka in the rent-to-own program, they did not learn (nor could they have learned

through reasonable means) of the integral role of the Owner Entities until Plaintiffs' Rule

30(b)(6) deposition of Rainbow Realty (for whom Mr. Hotka was the designated deponent) on

October 19, 2018. Plaintiffs had learned of the existence of Shore Waters through written

discovery produced by Defendants earlier in 2018, but the documentation did not reveal the

active role that Shore Waters plays in the rent-to-own scheme. Plaintiffs were also aware that

Defendants have established thousands of individual land trusts in order to acquire individual

rent-to-own properties (none of which are or will be named as defendants in this case), but did

not learn until the October 2018 deposition of the unique, integral role of the five Owner Trusts

in the rent-to-own program. Indeed, the deposition was the first time Defendants described the

role of the Owner Entities in any detail, notwithstanding the fact that Plaintiffs had asked in their

initial interrogatories a year prior in October 2017 that Defendants identify "all entities, including but not limited to trusts," with an ownership interest or other role in the rent-to-own program.

Based on this newly-discovered information, Plaintiffs are promptly moving to add the Owner Entities as defendants because of their role in the scheme and because their presence in this action is necessary to ensure full and complete relief to Plaintiffs and the putative class. The Owner Entities are wholly controlled by the current Defendants—indeed, they generally reflect Defendant Hotka's practice of creating myriad corporate entities and trusts (all under his control) to run the rent-to-own program. The Owner Entities are not distinct from the current Defendants in any practical way—they have no separate office space or file systems, they have no officers or employees other than Mr. Hotka, and their funds are commingled with those of the other Defendants. It is unlikely there will be substantial additional discovery needed given the intermingling of funds and activities between the current Defendants and the proposed Defendants. To the extent there are additional responsive documents not produced to date, many months remain in the discovery period. Accordingly, there is no reason to believe that the current Defendants will be prejudiced by the joinder of these additional parties as defendants.

*Second*, Plaintiffs seek to add Maria Gaspar and Franklin Paz as named plaintiffs and putative class representatives. Both Ms. Gaspar and Mr. Paz, like the other named Plaintiffs, are Rainbow customers who entered into a rent-to-own agreement with Rainbow Realty to acquire a home, because they had no other option. Third Am. Compl. ¶¶ 164, 203. They have now invested significant money and labor into trying to repair homes that had significant, expensive repairs that they could not have anticipated. *Id.* ¶¶ 151-52, 172, 206-08. In addition, Defendants failed to assess their ability to afford their homes and failed to give them legally-required

3

disclosures. *Id.* ¶¶ 166, 168, 200-01. They have each experienced Defendants' predatory product firsthand, and their experiences are representative of the hundreds of individuals who have entered into predatory contracts with Defendants.

Defendants have indicated that they do not oppose the addition of the two named plaintiffs and putative class representatives, but do oppose the addition of the six additional defendants.

## RELEVANT PROCEDURAL HISTORY

In this lawsuit, Plaintiffs, on behalf of themselves and one or more classes of similarly situated individuals, allege that Defendants operate a predatory "rent-to-own" scheme that targets low-income African Americans and Hispanics and majority-minority neighborhoods in the Indianapolis area, and thus discriminates on the basis of race, color, and national origin, constituting "reverse redlining" in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq*., and the Fair Housing Act, 42 U.S.C § 3601, *et seq*. Plaintiffs further allege that Defendants' practices violate the Truth in Lending Act, 15 U.S.C. § 1601, *et seq*.; Ind. Code § 32-31-8-5; and the Indiana Home Loan Practices Act, Ind. Code § 24-9-1-1, *et seq*.

### Previous Amended Complaints

Plaintiffs initiated this lawsuit on May 30, 2017, Compl. [Doc. No. 1], and have since filed two amended class action complaints. On September 20, 2017, Plaintiffs moved to file an amended complaint as of right pursuant to Rule 15(a)(1) to add a claim under the Indiana Home Loan Practices Act ("HLPA"), Ind. Code § 24-9-1-1 *et seq*. [Doc. No. 32]. Plaintiffs were unable to bring the HLPA claim at the outset of the case because of a statutorily-mandated waiting period that had not yet expired. The Court approved the motion and the First Amended Class Action Complaint [Doc. No. 34] was filed on September 21, 2017. On February 28, 2018,

Plaintiffs filed an unopposed motion for leave to file a second amended class action complaint to add an additional plaintiff, Cordell Spencer, and make three minor modifications to factual allegations. [Doc. No. 53]. On March 13, 2018, the Court granted that motion [Doc. No. 54] and filed the Second Amended Class Action Complaint [Doc. No. 55] ("Second Amended Complaint"). On June 18, 2018, the Court entered an order granting Plaintiffs' motion to voluntarily dismiss Ms. Espinoza and Mr. Martinez from the case following settlement of their individual claims. Order [Doc. No. 73].

### Case Management Plan and Discovery Deadlines

On October 10, 2017, the Court entered a Case Management Plan [Doc. No. 38] ("CMP"). The CMP set the Parties' deadline to seek leave to amend pleadings and/or join additional parties as December 30, 2017. CMP at 3. On July 11, 2018, the Parties jointly moved to modify the CMP to extend the discovery deadlines in this case. Joint Mot. to Modify CMP [Doc. No. 77]. As stated in that motion, Plaintiffs had not yet obtained all relevant documents and information from Defendants and, therefore, were unable to begin depositions. *Id.* ¶ 4. The Court granted the Parties' motion to modify the CMP on July 24, 2018. Order [Doc. No. 78].

Following receipt of sufficient additional discovery from Defendants earlier this fall, Plaintiffs conducted a Rule 30(b)(6) deposition of Defendant Rainbow Realty Group, Inc. on October 19, 2018, at which time they learned new information about the integral role of the Owner Entities in Defendants' rent-to-own program.

On November 15, 2018, the Parties jointly moved to further modify the CMP because the schedule set in the July 24, 2018 Order could not reasonably be met, despite the Parties' diligence. Joint Mot. to Modify CMP [Doc. No. 85]. The Court granted that motion on November 20, 2018. Order [Doc. No. 86]. Under the amended schedule approved in that order,

which extended all operative deadlines by six weeks, the Parties' deadline to complete non-expert/liability discovery is March 22, 2019; the deadline to file final witness and exhibit lists is March 29, 2019; class certification motions are due on April 8, 2019; dispositive motions are due on September 9, 2019; and the requested trial date is April 2020. *Id.*

## RELEVANT FACTS

### A.    Current Defendants

Defendants Rainbow Realty Group, Inc. ("Rainbow Realty"), Empire Holding Corporation, and James R. Hotka operate a predatory rent-to-own program targeting low-income, African American, and Hispanic individuals, families, and neighborhoods in Indianapolis. Third Am. Compl. ¶¶ 1-3, 9-14. Through the program, Defendants have purchased nearly 1,000 dilapidated, uninhabitable houses in and around Indianapolis ("Rainbow houses"), and have induced Plaintiffs and putative class members to enter into so-called "purchase agreements" under the false promise of home-ownership. *Id.* ¶¶ 1, 63. All customers are subjected to grossly inflated prices and exorbitant interest rates. *Id.* ¶¶ 84, 87. Defendants do not properly consider customers' ability to pay and do not provide legally-required disclosures to prospective customers. *Id.* ¶¶ 91, 97-99.

To operate this rent-to-own scheme, Defendants use a complex (indeed, labyrinthine) web of assumed names, holding corporations, and trusts. *Id.* ¶¶ 31-42. Defendant James Hotka is the President and Owner of both Rainbow Realty and Empire Holding Corporation. *Id.* ¶¶ 32-33. Rainbow Realty is the public-facing entity, managing the rent-to-own program and holding itself as the "landlord" of Rainbow houses in the program. *Id.* ¶ 31. It operates the program under its own name and 65 assumed names registered with the State of Indiana. *Id.* Defendants purchase homes to offer to the public by using an individual land trust created for purposes of bidding on a

house. *Id.* ¶ 33. Each of the hundreds of land trusts set up for this purpose have no checking accounts or other assets. *Id.* Each land trust owns, at maximum, one Rainbow house. *Id.* Empire Holding Corporation exists solely to serve as the trustee of these myriad trusts. *Id.* The direct or ultimate beneficiary of each land trust is either Mr. Hotka, Shore Waters (which distributes profits to Mr. Hotka's children), or a trust set up for the benefit of one of Mr. Hotka's four children. *Id.* ¶¶ 33, 34. In sum, current Defendants and proposed Defendants are all mutual agents of each other and/or are engaged in a joint venture to operate the program. *Id.* ¶ 42.

### B.    The Owner Entities

Through discovery, Plaintiffs have learned that Defendants utilize Shore Waters and the five Owner Trusts to operate the rent-to-own program. These Owner Entities supervise the transfer of income from Rainbow Realty and the individual land trusts to the beneficiaries of those trusts—Mr. Hotka and his four children—and pay Rainbow's expenses. *Id.* ¶¶ 34-40. Oct. 19, 2018 Rule 30(b)(6) Dep. of Rainbow Realty Group, Inc. 103:25-105:14, 238:21-241:4, 309:15-311:6 ("Rainbow Dep."). Rainbow Realty itself owns no properties, and all assets for the rent-to-own program and related income and expenses are claimed by Shore Waters or one of the other Owner Entities. Third Am. Compl. ¶¶ 33-34; Rainbow Dep. 62:14-21. The Owner Entities also receive income from; pay operating expenses and taxes for; and claim assets, profits, depreciation, and expenses on their share of the joint enterprise's inventory of Rainbow houses. Third Am. Compl. ¶¶ 34-40; Rainbow Dep. 71:11-14, 76:11-19, 77:23-78:2, 78:21-79:2, 79:15-19, 87:7-88:10, 89:23-25, 90:19-91:17, 94:4-10, 103:13-104:8, 114:11-15.

Prior to 2006, Defendants set up and used the five Owner Trusts to receive all income from (and pay the expenses of) the rent-to-own program. Third Am. Compl. ¶¶ 34-40; Rainbow Dep. 74:8-17. Those trusts are Alley Cat Trust, Redskins Trust, Sporting Trust, Sunflower Trust,

and Sunshine Trust. Third Am. Compl. ¶¶ 34, 36-40; Rainbow Dep. 71:15-72:15, 89:10-18. Sunshine Trust names Mr. Hotka as a beneficiary. Third Am. Compl. ¶ 36; Rainbow Dep. 89:10-18. The other four Owner Trusts name, respectively, each of Mr. Hotka's four children as the beneficiary. Third Am. Compl. ¶¶ 37-40; Rainbow Dep. 74:8-17. The Owner Trusts receive income from the rent-to-own program. Whenever a new rent-to-own property was purchased, Defendant Hotka would assign one of the Owner Trusts as the beneficiary of the land trust used to make the purchase. Then, when a Rainbow customer makes a payment to Rainbow Realty for a property for which an Owner Trust is a beneficiary, those payments are deposited in Rainbow's bank account and credited to the appropriate Owner Trust. Third Am. Compl. ¶¶ 34, 36-40; Rainbow Dep. 76:4-19, 77:23-78:2, 78:21-79:2. The Owner Trusts claim assets (including properties and depreciable improvements) from the rent-to-own program; pay many of the expenses of the rent-to-own program, including repair costs on Rainbow houses (and claim those expenses on their tax returns); and pay taxes on rent-to-own properties. Third Am. Compl. ¶¶ 34, 36-40; Rainbow Dep. 79:15-19, 87:7-88:10, 94:4-10, 104:23-105:8. Each of the Owner Trusts has its own account for the benefit of a specific Hotka child, except for Mr. Hotka's personal trust; the funds for the Sunshine Trust (for which Mr. Hotka is the beneficiary) flow to and from Mr. Hotka's personal savings account. Third Am. Compl. ¶ 36; Rainbow Dep. 72:20-73:1.

In short, the Owner Entities were set up by Mr. Hotka to run the rent-to-own program, own Rainbow houses, and distribute profits from the rent-to-own program to Mr. Hotka and his children. Accordingly, and for the reasons further explained below, the Owner Entities are integral to the current Defendants' joint operation of the rent-to-own program and are properly named as defendants here.

Shore Waters was then created by Mr. Hotka in 2006 to help distribute profits from the rent-to-own program to his children more evenly. Third Am. Compl. ¶ 35; Rainbow Dep. 92:12-17. Shore Waters is a limited liability corporation controlled exclusively by Defendant Hotka, the shares of which are partitioned equally between his children. Third Am. Compl. ¶ 35; Rainbow Dep. 88:23-89:22. Defendant Hotka is the registered agent and keeper of records for Shore Waters, and has been delegated sole decision-making authority for Shore Waters by his children. Third Am. Compl. ¶ 35; Rainbow Dep. 89:23-90:2, 95:3-8. Rather than assign beneficiaries for new properties on a rotating schedule between the Owner Entities, Mr. Hotka began declaring Shore Waters the beneficiary of all new trusts. Shore Waters' assets thus include all of the revenue generated by the land trusts created since 2006 (and their respective Rainbow houses), as well as depreciable improvements located at those houses (e.g., roofs, furnaces, hot water heaters), and it declares these assets and related depreciation on its tax returns. Third Am. Compl. ¶ 35; Rainbow Dep. 60:11-61:13, 71:11-14, 90:19-91:17.

The line between the Owner Entities, Rainbow Realty, and Defendant Hotka in running the rent-to-own program is non-existent. The Owner Entities exist solely to effectuate Defendants' rent-to-own program. The Owner Entities have never had employees, have no office space, and use Mr. Hotka's personal address or a P.O. box as their address. Third Am. Compl. ¶ 34; Rainbow Dep. 95:20-24. *All* of Shore Waters' assets are associated with Rainbow Realty. Third Am. Compl. ¶ 35; Rainbow Dep. 91:9-12. Indeed, Shore Waters does not have its own bank account, and all of its funds are commingled with Rainbow's bank account. Third Am. Compl. ¶ 35; Rainbow Dep. 98:3-17. Defendant Hotka buys properties for the rent-to-own program for the Owner Entities, providing a loan from either Rainbow Realty or his personal account to the Owner Entities. Rainbow Dep. 308:18-309:14, 311:1-6. Shore Waters and the

other Owner Entities then pay all of Rainbow's operating costs for the rent-to-own program,

including office and administrative expenses (e.g., supplies, phone, utilities, postage and mailing,

car and truck expenses, and insurance), advertising expenses, and other operating expenses (e.g.,

employee education, legal and professional fees), and taxes. Third Am. Compl. ¶ 34; Rainbow

Dep. 103:13-104:8, 105:09-14, 106:13-25 & Ex. 62. After distributing a significant profit to Mr.

Hotka's four children, any other remaining profits are credited to paying off the loans provided

to the Owner Entities to purchase the properties. Third Am. Compl. ¶ 35; Rainbow Dep. 74:1-7,

99:18-22.

Although certain documents produced by Defendants during discovery contained the

names of the Owner Entities, the nature or extent of the role of these entities in the rent-to-own

scheme was not apparent from those documents or other written discovery responses (nor was

that information readily ascertainable from any public source). Plaintiffs have diligently

attempted from the start of discovery to tease out the function of the hundreds of trusts and

corporations set up by Defendant Hotka as part of the rent-to-own program. Indeed, in Plaintiffs'

first set of interrogatories, propounded on Defendants over a year ago on October 20, 2017,

Plaintiffs asked Defendants to identify "all entities, including but not limited to trusts, that have

*owned* a rent-to-own property or that *otherwise have had a role* in operating the rent-to-own

program since January 1, 2009" (emphases added). Nevertheless, none of the Owner Entities

were named in Defendants' December 18, 2017 responses to those interrogatories (or in any

written discovery responses since then), so the October 19, 2018 Rule 30(b)(6) deposition was

the first time Plaintiffs were able to probe Defendant Hotka for this information.[2]

---

[2] As the Parties previously advised the Court, Plaintiffs were unable to commence depositions
until October 2018 because of the pace at which Defendants produced documents that were

### C.      New Named Plaintiffs and Putative Class Representatives

Through the Third Amended Complaint, Plaintiffs seek to add Maria Gaspar and Franklin Paz as named plaintiffs and putative class representatives.

#### 1.  Plaintiff Maria Gaspar

Ms. Gaspar has lived in a Rainbow house in Indianapolis since 2011. Her experiences with Defendants, detailed in paragraphs 147-74 of the Third Amended Complaint, are similar to those of the current named Plaintiffs.

Ms. Gaspar, who is Hispanic, moved into her Rainbow house in 2011 with her partner, who represented to Ms. Gaspar that he owned the home in full. *Id.* ¶ 150. The house is in a predominantly minority Indianapolis neighborhood. *Id.* ¶ 174. When Ms. Gaspar first saw the house, she discovered that it was unsafe and uninhabitable. *Id.* ¶ 151. Among other things, the house lacked electrical wiring, insulation, and plumbing, it had no furnace, the basement flooded severely and was full of mold, and the house was infested with rats and mosquitos. *Id.* Ms. Gaspar and her partner spent thousands of dollars and dozens of hours of labor to attempt to make the house habitable. *Id.* ¶¶ 152, 171.

Ms. Gaspar's partner was deported to Mexico and he was killed there in December 2015. *Id.* ¶ 162. Desperate not to lose the investment of money and hours used to repair the house and because she could not afford to move, and out of fear that her children would inherit the money still owed on the house as a debt, Ms. Gaspar sought to put her partner's purchase agreement in her name. *Id.* ¶¶ 163-64. Since she had not been on the original purchase agreement, however, Defendants told her she would need to enter into a new purchase agreement with them to remain

---

necessary to prepare for depositions. *See* Joint Mot. to Modify CMP (July 11, 2018) at 1-2 [Doc. No. 77].

in the home. *Id.* ¶ 165. Facing no other choice, she decided to enter into a purchase agreement in her own name, believing she would be buying the home she and her partner had shared. *Id.* ¶ 164-65. Defendants' Purchase Agreement presented the transaction as a seller-financed sale at a price of $16,902.00 with an interest rate of 13.31%, a down payment of $0, and a duration of 24 years. *Id.* ¶ 167. Based on these terms, Defendants calculated a monthly payment of $196 (plus an additional $16 per month for taxes), meaning that the total cost of the house would be approximately $55,700. *Id.* Defendants failed to provide Ms. Gaspar an independent appraisal or disclosures required by law. *Id.* ¶ 168. Although Ms. Gaspar has been making payments on the house for over 24 months, Defendants have never presented her the option to enter into a conditional sales contract on the house. *Id.* ¶ 165.

In October 2018, (after this lawsuit was filed), Ms. Gaspar sought representation for her claims against Defendants. Plaintiffs now move to add Ms. Gaspar as a named plaintiff and putative class representative.

### 2. Plaintiff Franklin Paz

Franklin Paz has lived in a Rainbow house since May 2017. Mr. Paz's experiences with Defendants, detailed in paragraphs 195-209 of the Third Amended Complaint, are similar to those of the other Plaintiffs. Mr. Paz, who is Hispanic, needed a house to live with his wife and three children because they had been robbed twice in the apartment they were living in and let the lease expire while they tried to find another rental they could afford. *Id.* ¶ 196. Mr. Paz entered into a purchase agreement to acquire a Rainbow house in a predominantly minority Indianapolis neighborhood under the false promise of home ownership. *Id.* ¶¶ 202, 209. Defendants failed to thoroughly assess Mr. Paz's ability to pay for the home; if they had, it would have been clear he had significant debts that would make it difficult for him to repay the

loan in the long-term. *Id.* ¶ 201. Defendants also failed to provide Mr. Paz an independent appraisal or disclosures required by law. *Id.* ¶ 200.

Although Mr. Paz knew the house needed work, he discovered that it was in worse condition than anticipated after he and his family moved in. *Id.* ¶ 205. Among other things, Mr. Paz discovered that portions of the walls have nothing under the siding such that rats and other creatures frequently enter the home and that the home had major leaks and extensive black mold. *Id*. Mr. Paz has spent thousands of dollars and dozens of hours of labor to attempt to make the house habitable. *Id.* ¶ 207.

After learning of this lawsuit, Mr. Paz contacted Plaintiffs' counsel and sought representation for his claims against Defendants in October 2018. Plaintiffs now move to add Mr. Paz as a named plaintiff and putative class representative.

## LEGAL STANDARD

Federal Rules of Civil Procedure 16(b)(4) and 15(a)(2) govern whether Plaintiffs' motion for leave to file the proposed Third Amended Class Action Complaint should be granted. Under Rule 16(b)(4), amendments after the deadline require the party seeking leave to articulate "good cause." *Alioto v. Town of Lisbon,* 651 F.3d 715, 719 (7th Cir. 2011). The good cause standard "primarily considers the diligence of the party seeking amendment." *W.P. v. Anthem Ins. Cos. Inc.*, No. 1:15-CV-00562-TWP-TAB, 2017 WL 660602, at *2 (S.D. Ind. Feb. 15, 2017) (citing *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005)).

Once the moving party establishes "good cause" under Rule 16(b)(4), the court will apply the requirements of Rule 15(a)(2) to determine whether amendment is proper. *Riggins v. Walter*, 279 F.3d 422, 428 (7th Cir. 1995). Under that rule, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Motions to amend should be granted except when

13

there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010).

## ARGUMENT

The Court should grant Plaintiffs' motion for leave to amend the complaint because (1) Plaintiffs have good cause to amend the complaint, as required by Rule 16(b)(4), and (2) Plaintiffs have met the requirements of Rule 15(a)(2), as Plaintiffs have moved promptly to amend the complaint after learning relevant information about the newly-named defendants during discovery, the proposed amendments are not prejudicial to Defendants, and amendment is not futile.[3]

## I.   AS REQUIRED BY RULE 16(B)(4), PLAINTIFFS HAVE GOOD CAUSE TO AMEND THE COMPLAINT BECAUSE OF NEWLY-DISCOVERED INFORMATION AND THE RECENT REQUESTS FOR REPRESENTATION BY MARIA GASPAR AND FRANKLIN PAZ.

### A.   Plaintiffs have good cause to add the Owner Entities because they first learned of the integral role of those entities in the rent-to-own program through a recent deposition.

There is good cause to permit the amendment because Plaintiffs moved diligently for leave to amend after learning new information that necessitates amending their Complaint. Plaintiffs only recently learned of the necessity of adding the Owner Entities as defendants at the 30(b)(6) deposition of Defendant Rainbow Realty on October 19, 2018. Similarly, proposed class representatives Maria Gaspar and Franklin Paz reached out to Plaintiffs' counsel for representation in October 2018, after hearing about this lawsuit.

---

[3] In addition, the Court should grant Plaintiffs' motion for leave to amend the complaint with respect to the two additional plaintiffs because Defendants have consented to that amendment.

The Seventh Circuit explains that "[i]n making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto*, 651 F.3d at 720. Good cause exists when a party has uncovered crucial facts relevant to the action in the course of discovery, and has moved promptly thereafter for leave to amend. *See, e.g., Gold v. YouMail, Inc.*, No. 1:12-CV-0522-TWP-TAB, 2013 WL 652549, at *1 (S.D. Ind. Feb. 21, 2013) (finding good cause and granting leave to amend when plaintiffs received information in discovery regarding which defendants to name as parties to their lawsuit, and moved for leave to amend two months after); *Armitage v. Apex Control Sys., Inc.*, No. 2:08-CV-45-WTL-WGH, 2010 WL 4318846, at *1 (S.D. Ind. Oct. 26, 2010) (Plaintiff established good cause when he learned of the basis for new causes of action during discovery, even when he moved for leave to amend over two years after the CMP deadline).

Courts have granted motions to amend complaints out of time in cases, like this one, where the identity or role of necessary defendants was learned in discovery. *See, e.g., Philpot v. Mansion Am., LLC*, No. 1:14-CV-01357-TWP, 2015 WL 4715328, at *2 (S.D. Ind. Aug. 7, 2015) (granting plaintiff's motion for leave to amend to add defendants out of time, noting that plaintiff had only obtained the identity of the additional parties in discovery, and that plaintiff had not unduly delayed seeking the amendment or otherwise acted in bad faith); *DaCosta v. City of New York*, 296 F. Supp. 3d 569, 605 (E.D.N.Y. 2017) (allowing amendment of complaint to add proper defendant after Court determined that defendants had withheld documents that would have revealed the identity of that defendant); *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 149 (S.D.N.Y. 2012) (finding that plaintiff acted diligently to add additional claims and defendants when facts previously unknown to plaintiff that "go to the heart of the corporate relationship" between the existing and new defendants were not adduced until a key deposition

was taken); *Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, No. 05 C 6391, 2007 WL 3037098, at *2 (N.D. Ill. Oct. 16, 2007) (granting plaintiff's motion out of time for leave to amend to add new corporate defendants after receiving discovery about their corporate relationship to the existing defendant); *Datastrip Int'l Ltd. v. Intacta Techs., Inc.*, 253 F. Supp. 2d 1308, 1317 (N.D. Ga. 2003) (granting motion to add defendants' wholly-owned subsidiaries as defendants after learning about the role of those subsidiaries during discovery); *Chalick v. Cooper Hosp./ Univ. Med. Ctr.*, 192 F.R.D. 145, 149 (D.N.J. 2000) (granting leave to amend to add proper defendants given evidence that defendants withheld information about those parties).

Plaintiffs have established good cause here to add the Owner Entities as defendants. Under the original CMP, the deadline to amend pleadings and/or join additional parties was December 30, 2017. Plaintiffs did not learn of the interconnected nature of Defendant Hotka's rent-to-own scheme until it took the Rule 30(b)(6) deposition of Rainbow Realty on October 19, 2018. As explained above, Defendants had produced certain documents containing the names of the Owner Entities (along with the hundreds of other land trusts Defendants use to acquire Rainbow houses for the rent-to-own program), but none of those documents or other discovery responses revealed that the Owner Entities are actively involved in operating the rent-to-own program by claiming program assets, paying program expenses, or distributing profits from the program to Mr. Hotka and his children. As none of this information is publicly available and was not disclosed by Defendants in response to written discovery requests, Plaintiffs were only able to learn this information through the Rule 30(b)(6) deposition of Rainbow Realty (which was scheduled promptly after Plaintiffs had received and had the opportunity to review Defendants' voluminous document productions). Because Plaintiffs did not discover the facts surrounding the legal and practical relationship between Defendant Hotka's business entities until after the

16

deadline to amend, the previously-agreed upon schedule could not have been reasonably met. As less than two months have passed since that Rule 30(b)(6) deposition at which Plaintiffs obtained this information, Plaintiffs have promptly and diligently moved to amend the complaint to add those entities as defendants.

**B.      Plaintiffs have good cause to add Maria Gaspar and Franklin Paz as named plaintiffs and putative class representatives.**

Plaintiffs also could not have moved to add Maria Gaspar and Franklin Paz as plaintiffs before the CMP deadline, as they did not seek representation until October 2018. That Plaintiffs have filed the instant motion close in time to eliciting these additional facts, and learning of Maria Gaspar's and Franklin Paz's request for representation, constitutes "good cause" to permit leave to amend under Seventh Circuit precedent. "A party may join new plaintiffs to a lawsuit if they assert a right to relief that arises out of the same transaction, occurrence, or series of transactions or occurrences and there is a common question of law or fact." *Hoffman v. Knoebel*, No. 4:14-CV-00012-SEB-TAB, 2016 WL 2619409, at *1 (S.D. Ind. May 6, 2016) (citing Fed. R. Civ. P. 20). Both Ms. Gaspar and Mr. Paz are Rainbow rent-to-own customers whose experiences with Defendants are similar to those of the current named Plaintiffs and the putative class they would represent. Their claims are identical to those of the current Plaintiffs and arise from the same type of transaction—the entry into a purchase agreement for a Rainbow house with Defendants—with common questions of law and fact to determine whether, as Plaintiffs allege, those agreements and Defendants' rent-to-own program as a whole are unlawful under federal and state law. Moreover, because of their common experiences and interest in pursuing their claims on behalf of themselves and other Rainbow customers, their participation in the case will help ensure that the interests of the putative class are adequately represented.

## II.     PLAINTIFFS' MOTION OTHERWISE MEETS RULE 15(A)(2)'S REQUIREMENTS.

Rule 15(a)(2) "reflects a liberal attitude toward amendments." *Durden v. Semafore Pharm., Inc.*, No. 1:10-cv-554-WTL-TAB, 2011 WL 2118952, at *2 (S.D. Ind. May 25, 2011); *see also Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F. 3d 843, 848-49 (7th Cir. 2002). Accordingly, leave to amend should be granted unless "the moving party has unduly delayed in filing the motion, . . . the opposing party would suffer undue prejudice, or . . . the pleading is futile." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008); *Durden*, 2011 WL 2118952, at *2. Since none of those factors is present here, leave to amend should be granted.

Plaintiffs have not unduly delayed in filing this motion (given the timing of when they discovered the necessity of adding additional Defendants) nor do they bring this motion in bad faith. Defendants will not be prejudiced because almost four months remain in the discovery period for Defendants to obtain additional discovery regarding the two additional plaintiffs. Finally, amendment will not be futile: the additional named plaintiffs assert factually similar allegations to the existing named plaintiffs, and the nature of Defendant Hotka's trusts and related companies support the inclusion of these entities as named Defendants in this action.

### A.     Plaintiffs have acted diligently to timely file an amended complaint.

First, Plaintiffs have acted diligently to file the Third Amended Complaint in a timely manner. Plaintiffs are filing this motion with months left in the discovery period, and shortly after learning of the facts that serve as the predicate for amendment. Plaintiffs have not engaged in any "excessive delay" that courts have found warrants the denial of a request for leave to amend. *See, e.g.*, *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, No. 1:14-CV-1734-WTL-DML, 2016 WL 1627736, at *3 (S.D. Ind. Apr. 19, 2016) (no undue delay when Plaintiff sought leave to amend eight months after the CMP deadline, when Plaintiff did not receive information

supporting the facts in the amended complaint until after the CMP deadline). To the contrary,

Plaintiffs learned of the relationship between Defendant Hotka's trust entities and his company,

Shore Waters Development, less than two months ago, and Plaintiffs have promptly moved to

add Ms. Gaspar and Mr. Paz as plaintiffs less than one month after they sought representation for

their claims against Defendants.

### B.   Plaintiffs' amendments will not prejudice Defendants.

#### 1.   Addition of the Owner Entities

Defendants will not be prejudiced by the addition of the Owner Entities—all of which

were formed and are controlled by Defendant Hotka for the sole purpose of running the rent-to-

own program. These entities have no employees or office space and their accounts and

operations are all managed by Defendant Hotka. Simply put, the addition of these entities as

named Defendants is not unfair because they are part of the same joint enterprise; they are

simply arms of the existing Defendants (which are two closely-held and related corporations and

their principal officer, James Hotka). Courts in this district have not found undue prejudice, and

have granted leave to amend, where parties have added defendants at far more advanced stages

than the instant case. *See, e.g., Durden*, 2011 WL 2118952, at *2 (finding no undue prejudice

when Plaintiff sought leave to amend and add additional defendants even after the deadline for

dispositive motions had passed).

As the Seventh Circuit has held, where "officers, directors, and shareholders of the

closely held defendant corporations were on constructive notice of the action and indeed were

active participants in it since its inception," there is no undue prejudice to the existing

Defendants or those individuals by being added as defendants. *Clark v. Universal Builders, Inc.*,

501 F.2d 324, 339-40 (7th Cir. 1974) (finding district court abused its discretion in denying leave

to amend to add principal officers, directors, and shareholders of defendant corporations).

Accordingly, courts find no undue prejudice in cases where plaintiffs seek to add defendants that

are wholly owned or closely related to existing defendants, or where plaintiffs seek to name the

correct defendants for liability purposes. *See, e.g., id.*; *Kinsey v. E & G Pizza Corp.*, No. IP00-

0821CTG, 2000 WL 1911885, at *3 (S.D. Ind. Dec. 8, 2000) (granting leave to amend to add

additional corporate defendant); *E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.*, 621 F.

Supp. 310, 315 (D. Del. 1985) (allowing addition of wholly-owned subsidiary as defendant,

citing the "extremely close intercorporate relationship" between the subsidiary and the principal

defendant, and noting that the defendant to be added should have known that joinder was a

possibility based on that relationship).

      Here, Defendant Hotka is the common link between the current Defendants and each of

the Owner Entities. Mr. Hotka formed and manages all of those entities. The Owner Entities

were set up and function solely to fund the rent-to-own program and distribute funds to and from

Defendants, Mr. Hotka, and his children. All decisions for the current Defendants and each of the

Owner Entities are made by Mr. Hotka. And the funds for all of these entities are intermingled in

accounts controlled by Mr. Hotka and his family. In sum, all of the entities (the current

Defendants and the parties Plaintiffs seek to add) constitute a single joint enterprise that runs the

Rainbow Realty rent-to-own operation. Given the significant overlap, the small number of

players involved, and the months remaining to complete discovery, there is no significant burden

or prejudice on the current Defendants or the Owner Entities caused by adding the remaining

participating entities at this time.

2.   Addition of Ms. Gaspar and Mr. Paz as Plaintiffs

With respect to the addition of Ms. Gaspar and Mr. Paz as plaintiffs and putative class members, courts routinely grant motions to add named plaintiffs in class action cases. *See, e.g.*, *Leathermon v. Grandview Mem'l Gardens, Inc.*, No. 4:07-cv-137-SEB-WGH, 2011 WL 2445980, at *4 (S.D. Ind. June 15, 2011).[4] "Federal policy favors joinder unless it would create prejudice, expense, or delay." *Hoffman*, 2016 WL 2619409, at *1 (citing *Chavez v. Illinois State Police*, 251 F.3d 612, 632 (7th Cir. 2001); *Broadstone v. Sherman's Place, Inc.*, No. 1:15-CV-01453-JES-JEH, 2016 WL 199395, at *2 (C.D. Ill. 2016)).

As stated above, Ms. Gaspar's and Mr. Paz's claims relate to analogous transactions and occurrences between themselves and Defendants that have been alleged by the current named plaintiffs and involve questions of law and fact common to all Plaintiffs. *See* Fed. R. Civ. P. 20(a)(1); Third Am. Compl. ¶¶ 148-178. Moreover, there is no prejudice to Defendants from adding Ms. Gaspar and Mr. Paz as plaintiffs because many months remain in the discovery period. Under the recently extended discovery schedule, the Parties' deadline to complete non-expert/liability discovery is March 22, 2019, four months from now. To date, Defendants have not requested dates nor noticed or taken any depositions of Plaintiffs. In short, Defendants have ample time prior to the completion of non-expert discovery for Defendants to seek discovery related to Ms. Gaspar's and Mr. Paz's claims.

---

[4] Indeed, even after class certification, substitution of previously unnamed-plaintiffs for named plaintiffs is common in class action lawsuits. *See Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006) ("Substitution of unnamed class members for named plaintiffs who fall out of the case because of settlement or other reasons is a common and normally an unexceptionable ('routine') feature of class action litigation [] in the federal courts.").

## C.      Plaintiffs' proposed amendments are not futile.

Third, Plaintiffs' proposed amendments are not futile. Amending a complaint is futile if the proposed new claims would not survive a motion to dismiss. *See Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974-75 (7th Cir. 2001). Here, Plaintiffs are not seeking to add new causes of action, amend their pleading in response to a motion to dismiss, or to cure substantive deficiencies related to their claims. Instead, Plaintiffs seek to add additional parties without amending their existing claims. Defendants have not previously moved to dismiss any of Plaintiffs' claims. Because Ms. Gaspar's and Mr. Paz's claims are identical to those of the existing Plaintiffs, based on parallel factual allegations, there is no new basis for a motion to dismiss that was previously unavailable to Defendants. Similarly, adding Defendant Hotka's additional business entities as defendants is appropriate given the nature of Defendant Hotka's rent-to-own joint enterprise and also does not provide a new basis for a motion to dismiss. Thus, amending Plaintiffs' complaint to add additional plaintiffs and defendants is not futile.

## CONCLUSION

Because Plaintiffs have shown good cause, the Third Amended Complaint will not prejudice Defendants, and the proposed amendments are not futile, the requirements for granting leave to amend under Rule 15(a)(2) and Rule 16(b)(4) are satisfied here. Plaintiffs respectfully request that this Court grant their Motion and direct the Clerk of Court to file Plaintiffs' Third Amended Class Action Complaint.


Dated: December 17, 2018                     Respectfully submitted,

                                            /s/ Laura Gaztambide-Arandes
                                            Glenn Schlactus
                                            Jennifer Klar
                                            Joseph J. Wardenski

Laura Gaztambide-Arandes
Andrea Lowe
RELMAN, DANE & COLFAX PLLC
1225 19th Street, NW, Suite 600
Washington, DC 20036
Phone: (202) 728-1888
Fax:     (202) 728-0848
gschlactus@relmanlaw.com
jklar@relmanlaw.com
jwardenski@relmanlaw.com
larandes@relmanlaw.com
alowe@relmanlaw.com

James P. Strenski
Ian P. Goodman
CANTRELL, STRENSKI & MEHRINGER, LLP
150 West Market Street, Suite 800
Indianapolis, IN 46204
Tel: 317.352.3500
Fax: 317.352.3501
jstrenski@csmlawfirm.com
igoodman@csmlawfirm.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 17, 2018, a copy of the foregoing Plaintiffs' Motion for Leave to File Third Amended Class Action Complaint was filed and served on all counsel of record using the Court's CM/ECF system.

/s/ Laura Gaztambide-Arandes
Laura Gaztambide-Arandes