UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC. et al, | )<br>)<br>) |
| Plaintiffs | )<br>) |
| v. | Cause No. 1:17-cv-1782 RLM-TAB |
| RAINBOW REALTY GROUP, INC. et al, | )<br>)<br>)<br>) |
| Defendants | ) |

OPINION AND ORDER

Plaintiffs Fair Housing Center of Central Indiana, Inc., Mary Kamano, Norma Tejeda, Cordell Spencer, Maria Gaspar, and Franklin Paz filed suit on behalf of themselves and other similarly situated individuals against defendants Rainbow Realty Group, Inc., founder and director James R. Hotka, and Rainbow's development organization, holding corporation, and associated trusts (collectively referred to as Rainbow in this opinion). The plaintiffs challenge Rainbow's "rent to buy program," alleging that the conditions of the homes Rainbow rents and the terms of its agreements with its customers violate Indiana and federal law. The five individual plaintiffs moved for class certification and the parties filed their responses and replies. The plaintiffs also filed a motion to supplement their motion for certification, and Rainbow objected to the supplement. For the reasons that follow, the court GRANTS IN PART the motion for class certification and DENIES the motion to supplement as moot.

## I. BACKGROUND

Rainbow Realty Group, Inc. leases and sells property in 13 counties in the Indianapolis area. Through Rainbow's "rent to buy" program, a customer can make monthly principal and interest payments on a home for 30 years, at which time he becomes the owner. The program's contract says that the buyer agrees to make 24 monthly principal and interest payments to Rainbow. Once those 24 payments have been made, Rainbow and the buyer execute a conditional 30-year land sale contract, and the buyer's first 24 payments are credited toward the 30-year agreement. [Doc. No. 140-1, p. 3]. The plaintiffs allege that the program is predatory and discriminatory in violation of state and federal law and seek certification of one class and three subclasses.

## II. MOTION FOR CLASS CERTIFICATION

To maintain a class action, the plaintiffs and the class they want to represent must meet the requirements under Fed. R. Civ. P. 23. First, the proposed class action must satisfy all four elements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Second, the action must be maintainable under at least one of the three provisions under Rule 23(b). Third, "a class must be sufficiently definite that its members are ascertainable." Jamie S. v. Milwaukee Pub. Sch., 668 F.3d 481, 493 (7th Cir. 2012) (internal citations omitted). The court must conduct a rigorous inquiry into the propriety of proceeding as a class before certifying. Livingston v. Associates Finance, Inc., 339 F.3d 553, 558 (7th Cir. 2003). The plaintiffs have the burden of showing

that their proposed class satisfies the requirements under Fed. R. Civ. P. 23 by a preponderance of the evidence. Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 811 (7th Cir. 2012).

*Numerosity*

The parties agree that the plaintiffs have satisfied the numerosity requirement. The plaintiffs estimate that there might be more than 2,000 class members. [Doc. No. 139-62]. Joinder of that many parties would be impracticable, so the numerosity requirement is satisfied. Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc., 747 F.3d 489, 492 (7th Cir. 2014).

*Typicality and Adequacy of Representation*

The parties agree that the individual plaintiffs' claims are typical of the class, with the exception of Maria Gaspar. The defendants alleged at oral argument that Ms. Gaspar's claims aren't typical because her husband originally executed a contract with Rainbow, and the contract was re-executed in Ms. Gaspar's name in 2016. The court notes that Ms. Gaspar personally signed a rent to buy program agreement with Rainbow in the relevant timeframe and is satisfied that she could adequately represent the class.

The plaintiffs say that they, along with the proposed class counsel, can "fairly and adequately protect the interests of the class" as Federal Rule of Civil Procedure 23(a)(4) requires. The five named plaintiffs are customers who signed

rent to buy contracts with Rainbow between 2012 and 2017. [Doc. Nos. 140-1, 140-2, 140-3, 140-4, and 140-5]. Nothing in the plaintiffs' conduct suggests they won't continue to pursue the litigation vigorously on the class's behalf, nor does the record suggest class counsel isn't qualified, experienced, and able to conduct the litigation.

*Commonality*

Parties can only sue as a class if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A question that must be answered individually for each class member depending on his circumstances isn't a common question. Jamie S. v. Milwaukee Pub. Sch., 668 F.3d 481, 498 (7th Cir. 2012). Nor is "the mere occurrence of all plaintiffs suffering as a result of a violation of the same provision of law" sufficient grounds for class certification. Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago, 797 F.3d 426, 434 (7th Cir. 2015) (*citing* Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011)). A class's claim must depend on a common contention that can be resolved as to all class members at once, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, 564 U.S. at 350.

Rainbow argues that the plaintiffs haven't identified a common question that can be resolved class-wide. The plaintiffs argue that their claims against Rainbow present four categories of common questions appropriate for class certification. They allege:

4

(1) Rainbow has engaged in reverse redlining in violation of the Fair Housing Act and Equal Credit Opportunity Act;
(2) Rainbow is subject to Indiana landlord-tenant laws on safety and habitability, and its disclaimer of these duties on its form agreement is unlawful;
(3) Rainbow deceives customers in violation of the Indiana Home Loan Practices Act; and
(4) Rainbow is subject to and violates four provisions of the Truth in Lending Act.

The court addresses each category of claims in turn.

**Reverse Redlining Claim**

The plaintiffs' complaint alleges that Rainbow's rent to buy program is discriminatory against and has a disparate impact on racial minorities in violation of the Fair Housing Act and Equal Credit Opportunity Act – a claim commonly known as reverse redlining.

Redlining, or excluding a person from renting or purchasing a dwelling on the basis of his membership in a protected class, is unlawful under the Fair Housing Act and Equal Credit Opportunity Act. The Fair Housing Act prohibits "discriminat[ing] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The Equal Credit Opportunity Act prohibits creditors from "discriminat[ing] against any applicant, with respect to any aspect of a credit transaction—on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). *See also* Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc., 135 S. Ct. 2507, 2521-2522 (2015) (The Fair Housing Act was enacted to address discriminatory practices

5

"includ[ing] zoning laws and other housing restrictions that function unfairly to exclude minorities from certain neighborhoods without any sufficient justification."); Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n, 388 F.3d 327, 328 (7th Cir. 2004) ("The language [of 42 U.S.C. § 3604] indicates concern with activities, such as redlining, that prevent people from acquiring property.").

Similarly, the Fair Housing Act prohibits extending credit to a protected class of people on terms less favorable than those offered to people outside of the protected class, which the plaintiffs refer to as reverse redlining. Stevens v. Hous. Auth. of S. Bend, Indiana, 663 F.3d 300, 310 (7th Cir. 2011) ("[42 U.S.C.] Section 3604(b) applies to discrimination linked to any terms, conditions, or privileges that accompanied or were related to a plaintiff's acquisition of her property."); *see also* Cty. of Cook v. Wells Fargo & Co., 115 F. Supp. 3d 909, 919 (N.D. Ill. 2015) ("Reverse redlining, by definition, is 'discriminat[ion] against any person… in the terms or conditions of [a mortgage loan] because of' a protected trait.") (*quoting* 42 U.S.C. § 3605(a)) (ellipsis in original). To bring a claim of discrimination under the Fair Housing Act or the Equal Credit Opportunity Act, a plaintiff must prove that the defendants' conduct has a disparate impact on members of a protected class or that the defendants had a discriminatory intent. Estate of Davis v. Wells Fargo Bank, 633 F.3d 529, 539 (7th Cir. 2011); Bloch v. Frischholz, 587 F.3d 771, 784 (7th Cir. 2009).

Rainbow argues that its program isn't predatory, and that because the condition of each rent to buy home at the time of sale varies, this claim can't be

6

answered class wide. The court won't address Rainbow's arguments that its program isn't predatory at this stage. Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013) (at the class certification stage, the court only considers the merits of a claim to the extent necessary to determine whether the claim meets Rule 23's requirements). The plaintiffs' reverse redlining claim can be resolved without analyzing the condition of individual rent to buy homes. Whether Rainbow's program is discriminatory or has a disparate impact in violation of the Fair Housing Act and the Equal Credit Opportunity Act is a question that can be answered as to all plaintiffs at once. Accordingly, this claim raises a common question.

**Habitability Claim**

The plaintiffs next argue that Rainbow is subject to Indiana law on the conditions of rental premises and unlawfully disclaims its responsibilities to deliver rental premises "in a safe, clean, and habitable condition" in compliance with health and housing codes and with its utilities "in good and safe working condition" on its rent to buy program contract. Ind. Code § 32-31-8-5(1), (2), (4); [Doc. No. 140-1, p. 3, 9]. The plaintiffs contend that this is a common question because Rainbow disavows these responsibilities as to every customer on its program contract. Rainbow argues again that to resolve this claim, the court would have to consider the condition of each rent to buy home, and such individualized review would defeat commonality.

The plaintiffs seek declaratory relief under Section 32-31-8-5 and individual relief under Section 32-31-8-6. Their claim for declaratory relief

7

stating that this state law provision applies to Rainbow is a common question because it can be answered as to all plaintiffs at once. But their claim for individual relief isn't common. A tenant must give the landlord notice of his noncompliance with the law and a reasonable amount of time to make repairs before he may bring a claim for damages. Ind. Code § 32-31-8-6(b). The court would need to conduct extensive fact-finding to see whether each class member met the notice and time requirements before it could allow the plaintiffs to proceed on their damages claims. That fact-specific inquiry defeats commonality because it wouldn't provide answers common to the class as a whole. *See* Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

**Indiana Home Loan Practices Claim**

The plaintiffs' third claim is that Rainbow has engaged in deceptive acts in violation of the Indiana Home Loan Practices Act, which prohibits "engag[ing] in a deceptive act in connection with a mortgage transaction or a real estate transaction." Ind. Code § 24-9-3-7(c)(3). A person commits a deceptive act when he knowingly or intentionally "makes a material misrepresentation" or "conceals material information regarding the terms or conditions of the transaction." Ind. Code § 24-9-2-7(a)(1).

The plaintiffs raise four issues under the Home Loan Practices Act. First, they argue that Rainbow deceives customers by failing to share the rent to buy program's success rate with them. Next, they argue that Rainbow misrepresents what it knows about its homes on the Sellers' Residential Real Estate Disclosure, an Indiana state form Rainbow provides to its customers that describes their

8

home's condition. Third, the plaintiffs contend that Rainbow's standard contract terms are confusing, contradictory, and reviewed quickly at the time of signing, so customers don't understand major provisions, such as the fact that they can be evicted from their homes. Finally, the plaintiffs challenge the provision of Rainbow's rent to buy purchase agreement that says, "Buyer acknowledges that he/she is receiving a substantial discount in purchase price, monthly payment, and down payment in consideration for repairing and maintaining property." [Doc. No. 140-1 p. 9]. The plaintiffs allege that this provision is deceptive because the homes are actually sold above market value.

The plaintiffs argue that these claims are common questions because Rainbow unlawfully deceives all of its customers in these four ways. Rainbow responds to these claims substantively, arguing that the deception that the plaintiffs allege doesn't exist.

The plaintiffs' claim that Rainbow violates the Home Loan Practices Act by failing to tell customers the program's success rate is a common question because by Rainbow's own admission, it never tells customers the success rate. [Doc. No. 148, p. 27]. Based on Rainbow's representation that it never provides this information, this claim can be resolved as to all class members at once, so it's a common question.

The other three issues the plaintiffs raise under the Home Loan Practices Act aren't common questions. What Rainbow knew about each program home, what it told the parties to each rent to buy contract, and what each customer understood at the time of signing are fact-specific questions that the court can't

9

answer without conducting individual fact finding. Similarly, the value of each home at the time of signing is a fact-specific issue. The court can't resolve these claims as to all plaintiffs at once, so they aren't common questions.

**Truth in Lending Act Claim**

In their fourth category of claims, the plaintiffs argue that Rainbow is a mortgagor under the Truth in Lending Act and fails to meet four of the Act's requirements:

(1) Make a reasonable, good faith determination as to each customer's ability to repay the loan offered. 15 U.S.C. § 1639c(a); 12 C.F.R. § 1026.43(c);
(2) Require customers to receive pre-loan counseling. 15 U.S.C. § 1639(u); 12 C.F.R. § 1026.34(a)(5);
(3) Provide customers with statutory disclosures. 15 U.S.C. §1639(a); 12 C.F.R. § 1026.32(c); and
(4) Provide customers with a written appraisal performed by a licensed or certified appraiser. 15 U.S.C. § 1639h; 12 C.F.R. § 1026.35(c)(6).

They allege that these are common claims because Rainbow's repayment determination process is "virtually nonexistent" and Rainbow itself admits it never fulfills the other three requirements. Rainbow responds only to the plaintiffs' claim that it doesn't make repayment determinations, arguing that repayment determinations are an inherently individual analysis, so that question isn't suitable for class resolution.

Whether Rainbow is required to and fails to make repayment determinations under the Truth in Lending Act isn't a common question. Rainbow says that it requests information about customers' finances during the application process, [Doc. No. 148-2, p. 8], so individual fact-finding would be required to determine whether its analysis was as to each customer was

10

sufficient under the Act. This claim can't be answered as to all plaintiffs at once, and it isn't common.

The plaintiffs' other three claims under the Truth in Lending Act are common questions. In the defendants' Responses to Requests for Admission, Rainbow said it doesn't require customers to provide certification of pre-loan counseling; provide customers with statutory disclosures like those required under the Truth in Lending Act; or provide customers with written appraisals. [Doc. No. 139-58]. Because Rainbow represents that its actions under these provisions are the same as to every program customer, these claims can be resolved class wide.

*Rule 23(b) Class Action Category*

After identifying common questions, the court must determine which form of class action, if any, is appropriate under Rule 23(b). The plaintiffs seek certification under 23(b)(2) or 23(b)(3). The court should "endeavor to select the most appropriate subsection, not just the first linguistically applicable one in the list." Jefferson v. Ingersoll International Inc., 195 F.3d 894, 898 (7th Cir. 1999).

A court can certify a class under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Rule 23(b)(2) presumes that class members' interests are "cohesive and homogenous" and their claims can be resolved class-wide, without fact-specific inquiries. A class can't be certified

11

under Rule 23(b)(2) if each member would be entitled to individual monetary damages. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360-361 (2011). But if the class primarily seeks injunctive or declaratory relief and individual damages are incidental to those other forms of relief, the class may be certified under Rule 23(b)(2). Incidental damages don't depend "in any significant way on the intangible, subjective differences of each class member's circumstances" and don't have to be determined through individual hearings. Lemon v. Int'l Union of Operating Engineers, Local No. 139, AFL-CIO, 216 F.3d 577, 581 (7th Cir. 2000) (*quoting* Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998)).

Rule 23(b)(3) allows class certification when (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for the fairly and efficiently adjudicating of the controversy." Fed. R. Civ. P. 23(b)(3). The court should consider: "the class members' interests in individually controlling the prosecution or defense of separate actions;" "the extent and nature of any litigation concerning the controversy already begun by or against class members;" "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" "and the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D). If a class is certified under this provision, members must receive notice of the action and the opportunity to opt out of the class proceeding. Fed. R. Civ. P. 23(c)(2). These requirements are designed to protect class members' Due Process rights in

claims for money damages. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 362-363 (2011).

The plaintiffs seek declaratory and injunctive relief and ask the court to enjoin Rainbow from future violations of the laws under which they bring their claims. These claims for relief are suitable for certification under Rule 23(b)(2) because they would provide relief to the class as a whole. On their own, they are also suitable for certification under Rule 23(b)(3) because adjudicating them in a class action would be a superior method for resolving the plaintiffs' claims.

But the plaintiffs also seek actual, compensatory, and consequential damages. All of their claims for actual, compensatory, and consequential damages would require individual calculations, with one exception. They make a claim for class-wide statutory damages under the Truth in Lending Act, 15 U.S.C. § 1640(a)(2)(B). Damages under that provision would flow directly to class members without individual calculations.

Because those claims require individual damages calculations (with the exception of the claim under Section 1640(a)(2)(B)), they can't be certified under Rule 23(b)(2). The damage claims wouldn't be incidental to the claims for injunctive or declaratory relief. Lemon v. Int'l Union of Operating Engineers, Local No. 139, AFL-CIO, 216 F.3d 577, 581 (7th Cir. 2000). Similarly, those claims aren't suitable for certification under Rule 23(b)(3) because questions common to the class wouldn't predominate over the claims for individual damages. Comcast Corp. v. Behrend, 569 U.S. 27, 34 (2013) ("Questions of

individual damage calculations will inevitably overwhelm questions common to the class."). The plaintiffs' claims can't all be certified under 23(b)(2) or 23(b)(3).

The court has another option. It can exercise its authority to certify claims that are appropriate for class resolution and leave others, such as those for individual damages, to be resolved in separate proceedings. Under Fed. R. Civ. P. 23(c)(4), the court can maintain a class action "with respect to particular issues," certifying only those claims suitable for class resolution. *See* McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 672 F.3d 482, 491 (7th Cir. 2012) (finding that the plaintiffs' claims for injunctive relief could be certified under Rule 23(b)(2) and 23(c)(4), and if the class won on those claims, its members could pursue damages claims in individual trials). By exercising its authority to certify "particular issues," the court can resolve common claims as to all class members at once and promote judicial economy. Id.; Phillips v. Sheriff of Cook Cty., 828 F.3d 541, 552 (7th Cir. 2016).

Under Rules 23(b)(2) and 23(c)(4), the court can certify the plaintiffs' claims seeking declaratory and injunctive relief; an order enjoining Rainbow from future violations of the specified laws; and statutory class damages under 15 U.S.C. § 1640(a)(2)(B). The court won't certify claims for individual actual, compensatory, and consequential damages. Class members can bring those claims in individual proceedings.

A court shouldn't certify a claim for class resolution under Rule 23(c)(4) if repeated proceedings would lead to a more accurate resolution of class members' claims or "[if] resisting a class action requires betting one's company on a single

14

jury verdict [and] a defendant may be forced to settle." McReynolds v. Merrill Lynch, 672 F.3d at 491. The claims the court is certifying don't pose a risk of inaccurate resolution. Further, the only claim for money damages is the class claim under the Truth in Lending Act, so there isn't a significant risk that Rainbow will be forced to settle.

*Class Definition*

The plaintiffs seek certification of a class of all people who "entered a [rent to buy] agreement with Rainbow for a residential property since the beginning of 2009, excluding those who successfully paid off their agreement." The defendants argue that this definition is insufficient because it doesn't account for the differences between claims of customers who are racial minorities and customers who aren't. The race of the plaintiffs is irrelevant to the common questions identified, so the court is satisfied with the plaintiffs' definition.

The plaintiffs also seek certification of three subclasses with identical definitions but different years based on the statutes of limitations for three of their claims. The statute of limitations on a claim is an affirmative defense, and a class can't be defined on whether a class member has a valid claim. *See* Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 825 (7th Cir. 2012). Accordingly, the court won't consider certification of the three proposed subclasses.

15

### III. Conclusion

Based on the foregoing, the court certifies a class of all people who entered a rent to buy agreement with Rainbow for a residential property since the beginning of 2009, excluding those who successfully paid off their agreement. The court certifies the following common questions for class resolution:

(1) Whether the defendants have engaged in discrimination in violation of the Fair Housing Act and the Equal Credit Opportunity Act;

(2) Whether the defendants are subject to and have violated Ind. Code § 32-31-8-5;

(3) Whether the defendants deceived customers as to the likelihood that they'll become homeowners under the Indiana Home Loan Practices Act;

(4) Whether the defendants are subject to the Truth in Lending Act and failed to meet its pre-loan counseling, statutory disclosure, and appraisal requirements; and

(5) Whether the plaintiffs are entitled to an award of class damages under the Fair Housing Act.

The court designates the five named plaintiffs, Mary Kamano, Norma Tejeda, Cordell Spencer, Maria Gaspar, and Franklin Paz, as the class representatives, and their counsel as class counsel.

Accordingly, the court GRANTS IN PART the plaintiffs' motion to certify class [Doc. No. 138] and DENIES as moot their motion to supplement their motion to certify class [Doc. No. 166].

SO ORDERED.

ENTERED: <u>March 27, 2020</u>

<u>　/s/ Robert L. Miller, Jr.</u>
Judge, United States District Court

Distribution: All Electronically Registered Counsel of Record