**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| FAIR HOUSING CENTER OF CENTRAL ) <br> INDIANA, INC., *et al.*, ) <br> ) <br>     Plaintiffs, ) <br> ) <br>     v. ) <br> ) <br> RAINBOW REALTY GROUP, INC., *et al.,* ) <br> ) <br>     Defendants. ) <br> ) | Case No. 1:17-cv-01782-JMS-TAB |

## STATEMENT OF INTEREST OF THE UNITED STATES

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517[1] to address the proper interpretation and application of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, *et seq*. The Department of Justice is among the federal agencies responsible for enforcement of ECOA. 15 U.S.C. § 1691e(h). The Court's Order resolving the parties' cross motions for summary judgment [Filing No. 332] raises questions regarding the application of ECOA, including some for which Plaintiffs have now requested reconsideration. The United States has a strong interest in the interpretation and application of this statute and believes that its participation will aid the Court in resolution of these issues.

This case raises the question of whether ECOA can apply to a contract which finances the sale of real property but also has terms found in a residential lease. ECOA's applicability does not hinge merely on whether a contract is a lease. Rather, the Court must determine whether the transaction constitutes "any aspect of a credit transaction" as defined by ECOA. 15 U.S.C. §

---

[1] 28 U.S.C. § 517 provides that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

1691(a)(1); 12 C.F.R. § 1002.2(m). Here, that analysis demonstrates that ECOA applies to this type of transaction, and the dismissal of Plaintiffs' ECOA claims should be reconsidered.

## I. Background

Plaintiffs sued Defendants Rainbow Realty Group, Inc., Empire Holding Corp., James R. Hotka, and other associated entities, regarding Defendants' "Rent-to-Buy" program in Indianapolis, Indiana. [Filing No. 100, at 2; Filing No. 332, at 1.] Plaintiffs allege that the program exploits consumers in predominantly Black and Hispanic neighborhoods by selling properties in poor condition at inflated prices and high interest rates through contracts that are designed to fail. [Filing No. 100, at 2-6.]

Under Defendants' "Rent-to-Buy" program, customers sign a contract called a "Purchase Agreement," subtitled as a "Rent to Buy Agreement" (hereinafter "RTB Agreement"). [*See, e.g.*, Filing No. 309-1, at 2.] The parties to the RTB Agreement are the customer ("Buyer" in the contract), Defendant Rainbow Realty Group, Inc. ("Landlord"), and the Individual Land Trust[2] that owns the property ("Seller"). [*Id.*] The RTB Agreement includes features of both a financed sale[3] and a residential lease. The contract specifies a purchase price and states, "Buyer agrees to pay [purchase price] for the Property." [*Id.*] It also sets a fixed interest rate and a "term of contract" (usually 30 years) over which payments are to be made. [*Id.*] Properties are sold "as-is," and the buyer is responsible for all repairs, real estate taxes, assessments, liens, and property insurance.

---

[2] Mr. Hotka creates an Individual Land Trust for each property he purchases and then deeds one property to each trust. [Filing No. 332, at 4 (citing Filing No. 308-7, at 5).] The Individual Land Trusts are not named as defendants in this case.

[3] Buyers also sign a "Purchase Agreement Declaration," on which they select the option for "BUYING" that states, "My intent is to purchase the property . . . I am not renting the property." [*See, e.g.*, Filing No. 309-5, at 2.] They then sign a "TRUTH-IN-LENDING DISCLOSURE," which lists the buyer as "Borrower" and discloses the finance charge and "TOTAL OF PAYMENTS" required to pay off the home's purchase price at the applicable interest rate. [*See, e.g.*, Filing No. 309-10, at 2.]

[*Id.* at 2-3.] However, the RTB Agreement also allows the seller to "enter, repair and/or inspect the property" if it so chooses, and includes a remedy of eviction if the buyer does not make timely payments – both of which are often features of rental contracts. [*Id.* at 2.]

The RTB Agreement's payment terms are also a hybrid of sale and lease language. The contract requires a "down payment" and calculates a "Total Monthly PITI [principal, interest, taxes, and insurance] Payment" that is based on the purchase price, fixed interest rate, and a 30-year "Term of Contract." [*Id.*] However, the contract describes these monthly charges as "rental payments to the Landlord that are equal to the PITI Payment stated below." [*Id.*] The RTB Agreement calls for the execution of a second document after two years of successful payment, with the same terms of sale: "Once the Buyer has made (24) twenty-four or more rental payments, the parties hereto shall execute a 'Conditional Sales Contract' (Land Contract) form embodying the terms contained herein." [*Id.*]

The majority of RTB customers are unable to maintain compliance with the RTB Agreements; Mr. Hotka (the "principal actor in connection with all of the Defendant entities" [Filing No. 332, at 4]) estimates that 70% of contracts fail in the first six months. [Filing No. 308-7, at 6 (Hotka AG Dep. at p. 12, lines 13-15).] Notably, there is no option for the buyer to terminate the RTB Agreement or decline to proceed with the purchase of the property without defaulting and incurring significant penalties and financial loss. [*See, e.g.*, Filing No. 309-1, at 3.] This includes losing the value of repairs and improvements made to the property, the "forfeit [of] all amounts paid (as rent)" that had accrued as equity, a "processing fee" of several hundred dollars if "for any reason the Property is returned to the Seller," and responsibility for lost rental income for up to 12 months if possession is returned to the seller. [*Id.*]

3

On August 12, 2022, the Court ruled on the parties' cross motions for partial summary judgment, granting summary judgment to Defendants on Plaintiffs' ECOA claims (among other rulings). [Filing No. 332, at 28-30, 36.] The Court reasoned that ECOA could not apply to the RTB Agreement because the contract is a residential lease under Indiana state law for at least the initial two-year period. [*Id.* at 29.] It further found that Rainbow could not be a "creditor" under ECOA because "Rainbow is the landlord during the first two years of the RTB Agreements, when the Agreements are residential leases, and Rainbow's involvement in the RTB transactions ends at the conclusion of that two-year period." [*Id.* at 30.] On August 26, 2022, Plaintiffs sought reconsideration of that Order. [Filing No. 338; Filing No. 339, at 4-9.] Plaintiffs also sought to clarify the status of the ECOA claims of those Plaintiffs who continued to make payments on RTB Agreements to Rainbow for more than two years. [Filing No. 337, at 1-2.] The Court has not yet ruled on these motions.

**II.     Argument**

**A.  A Contract Can Both Be a Lease and Also Be an "Aspect of a Credit Transaction" for Purposes of ECOA.**

Relying on *Rainbow Realty Group., Inc. v. Carter*, 131 N.E. 3d 168 (Ind. 2019), the Court concluded that the RTB Agreement is a residential lease for at least its first two years. [Filing No. 332, at 15-16 (citing *Carter*, 131 N.E. 3d at 173 ("For at least the first two years, the [RTB] Agreement was a residential lease with a contingent commitment to sell."))]. The Court further determined that because the RTB Agreement was a lease, it was not subject to ECOA. [*Id.* at 29 ("[ECOA] does not apply to residential leases.") (citing *Laramore v. Ritchie Realty Mgmt. Co.*, 397 F.3d 544, 547 (7th Cir. 2005)).]

The fact that the RTB Agreement may be considered a lease under Indiana (or any other) state law does not control whether ECOA applies.[4] ECOA provides that it is unlawful "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction[.]" 15 U.S.C. § 1691(a)(1). So long as a contract contains or constitutes "any aspect of a credit transactions" under ECOA, ECOA may apply. There is nothing in ECOA that carves out exceptions for contracts deemed to contain lease provisions under state law. In fact, during the time that the Board of Governors of the Federal Reserve was charged with oversight of ECOA, it stated that ECOA applies to "credit sales" as defined in TILA, which expressly includes certain leases. *See* Official Staff Commentary, Equal Credit Opportunity, Revision of Regulation B, 50 Fed. Reg. 48018-01 (1985 WL 126616) (Nov. 20, 1985) (ECOA applies to "credit sale[s]" as defined in the TILA regulations); *see also* 12 C.F.R. § 1026.2(16) (TILA definition of "credit sale" encompasses certain contracts "in the form of a bailment or lease").

In *Laramore v. Ritchie Realty Management Co.,* 397 F.3d 544 (7th Cir. 2005), the Seventh Circuit examined whether ECOA applied to a standard residential lease with no terms of sale in which monthly rent was exchanged for term-limited use of an apartment. The court held that this standard lease involved contemporaneous exchange of consideration (rent due by the first for continued occupancy that month) rather than deferment of debt. *Laramore*, 397 F.3d at 547. However, the Seventh Circuit specifically limited its ruling to the type of lease before it and noted that a lease with different terms could fall within ECOA:

> We say the "typical" residential lease because, even though the terms of a residential lease are often constrained by state and local laws, we do not foreclose the possibility that the parties to such a lease may craft a lease that might, by its terms, come under the terms of the ECOA.

---

[4] As the Court observed, the issue of whether the RTB Agreement was a "credit transaction" under ECOA was not relevant to or examined in *Carter*. [Filing No. 332, at 15.]

*Id.* at 547 n.2.

As *Laramore* suggests, a contract can both be a lease (or have some elements of a lease) and also involve an "aspect of a credit transaction" under ECOA. 15 U.S.C. § 1691(a). Thus, the finding in *Carter* that the RTB Agreement is a lease for purposes of Indiana state law does not mean the RTB Agreement cannot also include "any aspect of a credit transaction" under ECOA. 15 U.S.C. § 1691(a)(1). Both can be true: the RTB Agreement may include lease provisions and also involve an aspect of a credit transaction under ECOA.

**B. There Is Ample Evidence in the Record That the RTB Agreement Extends "Credit" and Involves an "Aspect of a Credit Transaction" as Defined by ECOA.**

ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction" on the basis of race, national origin, or other protected characteristics. 15 U.S.C. § 1691(a)(1). Congress intended that ECOA be broadly construed to achieve its purpose of protecting against discrimination in credit transactions. *See, e.g., RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC*, 754 F.3d 380, 385 (6th Cir. 2014) (noting ECOA's "broad remedial goals") (quoting *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1211 n.6 (6th Cir. 1997)). To that end, it gave the primary agency charged with overseeing ECOA (first the Federal Reserve Board and now the Consumer Financial Protection Bureau) the authority to promulgate regulations[5] "to carry out the [statute's] purposes" and "prevent circumvention or evasion" of ECOA's requirements. 15 U.S.C. § 1691b(a).

ECOA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d); *see also* 12 C.F.R. § 1002.2(j) (providing same definition of

---

[5] The rules implementing ECOA are known as "Regulation B." *See* 12 C.F.R. pt. 1002.

"credit"). A "credit transaction" includes "every aspect of an applicant's dealings with a creditor regarding an application for credit or an existing extension of credit (including, but not limited to, information requirements; investigation procedures; standards of creditworthiness; terms of credit; furnishing of credit information; revocation, alteration, or termination of credit; and collection procedures)." 12 C.F.R. § 1002.2(m); *see also Matthews v. New Century Mortgage Corp.*, 185 F. Supp. 2d 874, 887 (S.D. Ohio 2002) (noting that for purposes of ECOA, "[a] 'credit transaction' has been deemed to include not only the extension of credit itself, but also terms of credit, along with various other matters").

On its face, the RTB Agreement is the kind of atypical lease anticipated in *Laramore*, as its terms fit within ECOA's definition of "credit." *See Laramore*, 397 F.3d at 547 n.2. Unlike the "typical" residential lease, the RTB Agreement includes the right (and in fact obligates the buyer) to purchase the property, with payment for the purchase deferred over a fixed term of usually 30 years. [*See, e.g.*, Filing No. 309-1, at 2.] The RTB Agreement contains all of the essential terms for this credit purchase, including the purchase price, interest rate, and payment schedule. [*Id.*] If the buyer is able keep up with the payments and other requirements, she will own the home after 30 years of payments. Thus, there is sufficient evidence in the record to create a triable issue of fact on whether the RTB Agreement meets ECOA's definition of credit, even if the buyer is ultimately unable to complete the purchase. 15 U.S.C. § 1691a(d) (defining credit as "the *right* granted by a creditor to a debtor . . . to purchase property . . . and defer payment therefor.") (emphasis added).

That the RTB Agreement calls for a second document (the Conditional Sales Contract) to be executed after two years of payments does not change the nature of the initial contract as a stand-alone credit transaction. In fact, Rainbow affirmed that buyers can complete the purchase by

paying the amount specified in the RTB Agreement without ever signing a Conditional Sales Contract.[6] [Filing No. 308-16, at 54-55 (Rainbow 30(b)(6) Dep. at p. 305, line 4 to p. 307, line 4).]

Even if a fact-finder determines that the right to "purchase property . . . and defer payment therefor[,]" 12 C.F.R. § 1002.2(j), is not established unless the parties sign the Conditional Sales Contract, the RTB Agreement likely would still be an "aspect of an applicant's dealings with a creditor regarding an application for credit" under ECOA. 12 C.F.R. § 1002.2(m). Per the RTB Agreement's terms, making payments under the contract for two years is a prerequisite for a buyer who wants to sign a Conditional Sales Contract for purchase of a property on the agreed-upon terms. [*See, e.g.* Filing No. 309-3, at 2 ("Once the Buyer has made (24) twenty-four or more rental payments, the parties hereto shall execute a 'Conditional Sales Contract' (Land Contract) form embodying the terms contained herein.").] Therefore, even if the RTB Agreement is found to not extend credit itself, it may still be an "aspect of a credit transaction" for purposes of ECOA. 15 U.S.C. § 1691(a)(1).

### C. There Is Ample Evidence in the Record That Rainbow Is a "Creditor" Under ECOA.

Whether Rainbow and other Defendants meet ECOA's definition of "creditor" is a highly fact-specific inquiry. ECOA's definition of "creditor" includes entities beyond the party that signs a credit agreement. A "creditor" under ECOA is a person (defined to include corporations) "who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e)-(f). Regulation B defines "creditor" as "a person who, in the ordinary course of business, regularly participates in a credit

---

[6] Although the RTB Agreement states that a second document will be executed after two years, Plaintiffs cite evidence that over 600 buyers in the Plaintiff class did not in fact execute Conditional Sales Contracts when the initial two-year period ended, but instead continued making payments towards the purchase of their homes to Rainbow under the RTB Agreements. [Filing No. 337, at 2.]

decision, including setting the terms of the credit." 12 C.F.R. § 1002.2(ℓ). For purposes of ECOA's regulations regarding discrimination and discouragement, 12 C.F.R §§ 1002.4(a) and (b), "creditor" also includes "a person who, in the ordinary course of business, regularly refers applicants or prospective applicants to creditors, or selects or offers to select creditors to whom requests for credit may be made." *Id*.

ECOA's definition of "creditor" is broad enough to encompass many roles in a credit transaction and is not limited to only the entity financing the transaction. *See Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 980 (7th Cir. 2004) (finding that Gateway was a "creditor" under ECOA because it could "decide[] not to send an applicant's credit application to *any* lender," "restructur[e] the terms of the sale in order to meet the concerns of the creditor," and set terms of credit, including the "the annual percentage rate (APR) associated with the sale," from which it would directly benefit).

There is evidence in the record that Rainbow's role with respect to the RTB Agreements is not one of a typical "landlord," notwithstanding that designation in the contract. Rainbow makes decisions regarding whether an application for an RTB Agreement will be approved, and also determines the specific financial terms that will be offered for a property, including purchase price, monthly payment amount, interest rate, and term of the contract. [*See, e.g.*, Filing No. 308-16, at 10-11 (Rainbow 30(b)(6) Dep. at p. 41, line 15 to p. 44, line 4) and 34 (Rainbow 30(b)(6) Dep. at p. 194, line 15 to p. 197, line 25).] The fact that Rainbow makes the decisions on application approval and sets financial terms, including interest rate, indicates that Rainbow is acting like a "creditor" under ECOA and Regulation B. By doing so, Rainbow "regularly arranges for the extension . . . of credit," 15 U.S.C. § 1691a(e), and "participates in a credit decision, including setting the terms of the credit," 12 C.F.R. § 1002.2(ℓ).

There is also evidence that Rainbow makes decisions regarding whether and when to evict a buyer or agree to a payment plan. [*See, e.g.*, Filing No. 308-16, at 53 (Rainbow 30(b)(6) Dep. at p. 298, lines 3-21) and 56 (Rainbow 30(b)(6) Dep. at p. 311, lines 7-23).] In this role, Rainbow regularly makes decisions about whether or not to "continue[] credit," impacting the buyer's ability to continue with the purchase of the home.[7] 15 U.S.C. § 1691a(e). Thus, there is sufficient evidence in the record – particularly when drawing all reasonable inferences in favor of the Plaintiffs – to create a triable issue of fact on whether Rainbow is a "creditor" under ECOA.

### III.   Conclusion

For the reasons discussed above, the United States supports reconsideration of Plaintiffs' ECOA claims.

| | |
|---|---|
| Dated: September 12, 2022 | Respectfully Submitted: |
| | KRISTEN CLARKE<br>Assistant Attorney General |
| | */s/ Anna Purinton*<br>SAMEENA SHINA MAJEED<br>Chief<br>LUCY G. CARLSON<br>Deputy Chief<br>ANNA PURINTON<br>Trial Attorney<br>Housing and Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>150 M Street, NE<br>Washington, DC 20530<br>Phone: (202) 598-7768<br>Fax: (202) 514-1116<br>Email: anna.purinton@usdoj.gov<br>*Attorneys for the United States* |

---

[7] The Court denied Plaintiffs' request to pierce the corporate veil to hold the named Defendants liable for the actions of the non-party Individual Land Trusts that sign the Conditional Sales Contracts. [Filing No. 332, at 30.] The United States does not address this issue, other than to note that it would likely subvert the purposes of ECOA if a creditor were able to avoid ECOA's requirements by creating a separate entity for every transaction.

## **CERTIFICATE OF SERVICE**

On September 12, 2022, I caused a true and accurate copy of the foregoing to be filed using the Court's CM/ECF system, which will send an electronic notice of filing to all counsel of record.

                                                                              */s/ Anna Purinton*