**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

|  |  |
|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RAINBOW REALTY GROUP, INC., *et al.*, <br><br> Defendants. | Case No. 1:17-cv-01782-JMS-TAB |

<u>**BRIEF IN SUPPORT OF JOINT MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**</u>

Plaintiffs and Class Representatives Mory Kamano, Norma Tejeda, Cordell Spencer, Maria Gaspar, and Franklin Paz ("Plaintiffs") and Defendants Rainbow Realty Group, Inc., Empire Holding Corp., Shore Waters Development, LLC, Alley Cat Trust, Sporting Trust, Sunflower Trust, Sunshine Trust, Redskins Trust, and James Hotka ("Defendants"), hereby move the Court to certify a settlement class and preliminarily approve the Parties' Settlement Agreement, [Filing No. 381-1], resolving the class claims asserted in this matter.

## I.   <u>Introduction</u>

After substantial litigation and extensive settlement discussions the Parties have agreed to and executed a comprehensive Settlement Agreement resolving all claims raised by the Plaintiffs in the case, including the class claims. [Filing No. 381-1.] The Parties request that the Court certify all class claims for settlement purposes because the class allegations in the complaint related to acts that were consistent throughout the class period. Furthermore, the Settlement Agreement eliminates the concerns that led to the denial of class certification with respect to

certain claims earlier in the litigation, namely and primarily the necessity of individualized factfinding.

Overall, the Settlement Agreement is fair, reasonable, and adequately compensates the class. The Agreement establishes a class fund of $525,000 that will be distributed to all class members who submit a claim. The distributions would be based on the same types of factors that would guide a jury's determination of appropriate damages. The resulting distribution amounts will be highly beneficial to the class members in light of the current status of the case, where no active class claims for damages remain. If the case were to continue, the class members could only obtain a monetary award if Plaintiffs prevailed on the remaining FHA class claim for declaratory relief and then also succeeded in subsequently filed, separate individual cases for damages, or if Plaintiffs were successful on appeals of previous Court opinions denying class certification or granting summary judgment against Plaintiffs. Neither scenario is probable at this stage, and each would undoubtedly require significant expenditures of time and resources. Even if Plaintiffs were able to proceed to trials with their damages claims, the very factors that would determine the extent of any awards are the same factors that will be used to determine their settlement distribution under the Agreement.

In addition, the Agreement provides for equitable relief that is equal to or exceeds the equitable relief sought in the case. Importantly, Plaintiffs' counsel has agreed to waive all of their fees in an effort to maximize the amounts that class members will receive from the settlement payment from Defendants.

Finally, the Agreement sets forth, in detail, the various necessary administrative processes for completion of the settlement, including the retention of a claims administrator, notice provisions, and methods for opting out and submitting objections.

In sum, the Settlement Agreement is a highly developed, comprehensive document that will ensure that all class members who seek to participate will receive a monetary distribution that they very likely would not receive if the case were to proceed in litigation.

## II.    **Factual and Procedural Background**

For over a decade, Defendants administered a Rent-to-Buy ("RTB") program in and around Marion County, Indiana. Between January 1, 2009, and the termination of the program in September 2019, more than two thousand customers entered into RTB Agreements with Defendants. With the exception of minor, non-substantive changes to the language of the operative agreements, the terms of the RTB Agreements were identical for all customers. In addition, uniform policies governed how Defendants administered the program.

On May 30, 2017, Plaintiffs commenced this action individually, and on behalf of a class of individuals who entered into RTB Agreements with Defendants on or after January 1, 2009, excluding individuals who successfully paid off their agreements, for alleged violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Indiana Home Loan Practices Act ("HLPA"), Indiana Code § 24-9-1-1 *et seq.*, and Indiana Code § 32-31-8-5 (the "Civil Action").[1] On December 17, 2018, Plaintiffs filed a Third Amended Complaint, which is the operative complaint in this Civil Action, asserting the same claims. Discovery in the case was extensive, including the production of tens of thousands of pages of documents, the taking of more than 20 depositions, the exchange of multiple expert

---

[1] At the time of the filing of the original Complaint, the individual Plaintiffs were Nelly Espinoza, Mory Kamano, Marvin Martinez, and Norma Tejeda. On May 25, 2018, Ms. Espinoza and Mr. Martinez voluntarily dismissed their claims against Defendants pursuant to the terms of a settlement agreement. *See* [Filing No. 70.] Plaintiffs subsequently filed the Second Amended Complaint, which added Cordell Spencer as a Named Plaintiff, [No. 53,] and Third Amended Complaint, which added Maria Gaspar and Franklin Paz as Named Plaintiffs, [Filing No. 100.]

reports, and the filing of numerous motions. Motions practice followed.

On March 27, 2020, the Court granted in part and denied in part Plaintiffs' motion for class certification, certifying certain claims under the FHA, ECOA, TILA, the Indiana Home Loan Practices Act, and Indiana Code § 32-31-8-5, *et seq.*, pursuant to Federal Rule of Civil Procedure 23(b)(2). The Court defined the class as all people who entered into an RTB Agreement with Defendants for a residential property since the beginning of 2009, excluding those who successfully paid off their agreement.

On March 10, 2021, the Court granted Defendants' Motion for Partial Summary Judgment on Plaintiffs' class claims under the Indiana Home Loan Practices Act, and Indiana Code § 32-31-8-5, *et seq.* On April 13, 2021, the U.S. Court of Appeals for the Seventh Circuit denied Plaintiffs' petition for leave to appeal the class certification order pursuant to Federal Rule of Civil Procedure 23(f).

On August 12, 2022, the Court denied Plaintiffs' Motion for Partial Summary Judgment in its entirety and granted Defendant's cross-motion for summary judgment on Plaintiffs' class and individual claims pursuant to TILA, ECOA, and FHA (as to disparate impact claims). As a result of the Court's August 12, 2022 summary judgment ruling, Plaintiffs' remaining claims included the Class Representatives' individual FHA disparate treatment claims for injunctive relief, declaratory relief, and damages, their Indiana statutory claims, and Class Members' FHA disparate treatment claims for declaratory and injunctive relief. [Filing No. 332.]

Plaintiffs subsequently filed a motion for reconsideration of the Court's summary judgment order and a motion to clarify the Court's summary judgment order. [Filing Nos. 337, 338.]

The Court granted in part and denied in part Plaintiffs' motion for reconsideration, but its

4

decision did not revive any of Plaintiffs' dismissed claims. [Filing No. 360.] The Court also granted in part Plaintiffs' motion to clarify, concluding that individual Class Members' claims for damages will not be determined as part of this litigation and noting that it did not issue a summary judgment ruling regarding a subset of Plaintiffs' ECOA claims. *Id.* Plaintiffs subsequently voluntarily dismissed, with prejudice, any remaining claims they had under ECOA.

Accordingly, the status of Plaintiffs' class claims at the end of the motions practice were set forth by the Court as follows:

| CLAIM | CLASS CLAIM REMAINING? |
|---|---|
| Count I – Violation of ECOA – discrimination related to credit transactions and reverse redlining | NO – Dismissed |
| Count II – Violation of FHA<br>    1.   disparate treatment<br><br>    2.   disparate impact | 1.  YES – injunctive, declaratory relief only<br>2.  NO |
| Count III – Violation of TILA (Ability to Repay) | NO |
| Count IV – Violation of TILA (Pre-Loan Counseling) | NO |
| Count V – Violation of TILA (Mandatory Disclosure) | NO |
| Count VI – Violation of TILA (Appraisal) | NO |
| Count VII – Violation of Indiana Code § 32-31-8-5 | NO |
| Count VIII – Violation of Indiana Code § 24-9-3-7(c)<br>  1.  failing to share rent-to-buy program's success rate with buyers<br>  2.  misrepresentations on Sellers' Residential Real Estate Disclosure<br>  3.  standard contract terms are confusing, contradictory, and reviewed quickly at time of signing<br>  4.  provision regarding RTB nature of contract is deceptive | 1.  NO<br>2.  NO<br>3.  NO<br><br>4.  NO |

Throughout the case, the Parties engaged in extensive efforts to settle this matter. The Parties held telephonic and video settlement conferences with Magistrate Judge Tim Baker on May 25, 2020; October 6, 2021; and September 2, 2022, without success. After Plaintiffs' motion for reconsideration was denied, the Parties were able to reach an agreement with the assistance of Magistrate Judge Baker and have now negotiated, finalized, and executed a

Settlement Agreement providing for class-based relief to all class members and individual relief to the individual plaintiffs for their individual claims.

**III.**     **Summary of Settlement Agreement**

After agreeing to a settlement in principle the Parties negotiated for several weeks to produce an agreed-to, comprehensive Settlement Agreement that addresses all of the necessary issues to resolve all claims and process the class claims. The terms agreed to in the Agreement can be summarized as follows.

The Defendants have agreed to pay a total of $750,000 in settlement of all claims that have or could have been raised in relation to the claims asserted by Plaintiffs. Of that amount, $525,000 will be paid into a settlement fund that will be used exclusively to pay claims made by class members, who are defined as "all individuals, including Class Representatives and Declarants, who entered into a RTB Agreement with any Defendant and/or any Individual Land Trust (as Seller), during the Class Period, excluding all persons who opt out of the Settlement and all persons who successfully paid off their RTB Agreement." [Filing No. 381-1 at 5.] For every class member who submits a claim, an "individual distribution basis" will be calculated based on the date the RTB agreement was signed, the number of months of the RTB agreement, and the finance charges paid and agreed to. *Id.* at 11-12. The individual distribution basis will then be used to calculate the pro rata share each class member will receive from the settlement fund. *Id.* In addition, each class representative will receive an additional $5,000 and each declarant, who submitted a statement in support of the motion for class certification, will receive an additional $2,500. *Id.* at 10. The remaining $50,000 of the class settlement fund will be used for administrative costs. *Id.* at 9-10.

The sum of $175,000 separately will be used to compensate the individual plaintiffs, including the organizational plaintiff, for the damages sought pursuant to their individual claims. *Id.* at 12. The organizational plaintiff will receive $50,000 and each individual plaintiff will receive $25,000 in settlement of all the individual claims they had pleaded, including those that had survived summary judgment and were scheduled to be tried by jury. *Id.*

Defendants further agree under the Settlement Agreement to (1) comply to the extent applicable with all the statutes that formed the basis of claims in the case; (2) ensure that officers, directors, management-level employees, and employees who interact with customers receive comprehensive training about the fair housing laws, lending discrimination, and predatory lending; and (3) adopt a comprehensive fair housing policy. *Id.* at 14-15.

Plaintiffs' counsel will receive no compensation for any fees or costs expended in the litigation. *Id.* at 12.

The agreement sets forth a process for notice and approval of the agreement. After the filing of this motion Defendants shall provide Plaintiffs' counsel a class member list. Plaintiffs will retain a claims administrator that will conduct a skip trace to identify the current address for each class member. *Id.* at 16. The claims administrator will then send the class notice and claims form to each class member. *Id.* The notice provides information regarding opting out of the class and for submitting objections. *Id.* at 44-54. If the Court provides preliminary approval of the settlement, the Parties request that the Court set deadlines for class members to opt out or file objections and set a date for a final fairness hearing. *Id.* at 17, 19. Upon receiving submitted claims, the claims administrator shall confirm eligibility and then calculate individual awards based on the formulas set forth in the agreement. *Id.* at 19-20. Upon final approval, the class members' claims will be deemed released. *Id.* at 23-24. The agreement further provides that the

Parties will prepare a joint press release and otherwise will not reach out to or comment on the agreement to the media. And the class representatives and class members shall not post information about the agreement on social media or websites. *Id.* at 24-25.

## IV.   Certification of Class for Settlement is Appropriate

Pursuant to Federal Rule of Civil Procedure 23(e), the Parties jointly request that this Court certify a class for settlement purposes under Rule 23(b)(2) and (b)(3). To obtain class certification, the Parties must show that the class meets the four prerequisites of Federal Rule of Civil Procedure 23(a)— "numerosity," "commonality," "typicality," and "adequacy of representation"—and that the class falls within "one of three types" specified in Rule 23(b). Here, the proposed Settlement Class satisfies the criteria of Rule 23(a) and satisfies Rule 23(b)(2) and Rule 23(b)(3) with respect to both the claims previously certified and with respect to those not already certified. The Court previously certified a class for five questions: (1) whether Defendants have engaged in discrimination in violation of FHA and ECOA; (2) whether Defendants are subject to and have violated Ind. Code § 32-31-8-5 (Indiana's landlord-tenant laws); (3) whether Defendants deceived customers as to the likelihood that they will become homeowners under the Indiana Home Loan Practices Act; (4) whether Defendants are subject to TILA and failed to meet its pre-loan counseling, statutory disclosure, and appraisal requirements; and (5) whether Plaintiffs are entitled to an award of statutory damages under TILA. [Filing No. 176 at 16.] Plaintiffs and Defendants now seek certification for the purpose of culmination of the settlement of the outstanding claims that were not certified.

### A. Rule 23(a) Is Satisfied

#### i.  *Rule 23(a)(1) – Numerosity*

The Court and Defendants have both already agreed that the proposed class satisfies the Rule 23(a)(1) requirement that "the class is so numerous that joinder of all members is impracticable." [Filing No. 148 at 16]; [Filing No. 176 at 3]. There are more than 2,000 members of the class and the joinder and individual settlement of that many claims would be time-consuming and costly. *See Physicians Healthsource, Inc. v. A-S Medication Sols.*, 318 F.R.D. 712, 721 (N.D. Ill. 2016) (40 class members is generally sufficient).

#### i.  *Rule 23(a)(2) – Commonality*

Parties establish commonality when the issue is capable of "class-wide resolution," meaning the answer "will resolve an issue that is central to the validity of each one of the claims in one stroke," and is "apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality is satisfied when there is a "common nucleus of operative fact," *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), or where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, *see Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) (same central questions exist for all class members: whether product sold to all class members was inherently defective, whether defendant knew of this defect, and whether the product warranty covered the defect); *Mejdrech v. Met–Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) (commonality finding appropriate where common questions are whether defendant unlawfully leaked dangerous chemicals and whether the chemicals contaminated the contiguous area underlying class members' homes).

To establish commonality, "even a single common question will do[.]" *Wal-Mart*, 564 U.S. at 359 (internal quotation marks and alterations omitted). Further, courts routinely certify

common questions for settlement purposes even when a liability determination would have required some individual factual determinations, in addition to the common question, had the claims been litigated. *See, e.g.*, *Chi. Teachers Union, Loc. No. 1 v. Bd. of Educ. of Chicago*, Nos. 12-cv-10311, 15-cv-8149, Dkt. 358 (Apr. 14, 2022) (granting preliminary approval of a settlement class even though individual factfinding would have been required for litigation); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 1:05-cv-06583, Dkt. 616 (Dec. 6, 2013) (same). Each claim for which the Parties seek class certification turns on just such a common question.

**Habitability.** Plaintiffs' claim based on the state law requirements for the condition of rental premises, Ind. Code. § 32-31-8-5, turns on common questions that can be resolved on a class-wide basis. The Parties agree and the Court has already recognized, *see* [Filing No. 176 at 7-8], that liability for the habitability claim turns on whether Defendants, as a policy, kept homes "in a safe, clean, and habitable condition," "[c]ompl[ied] with health and housing codes" applicable to the rental premises, or provided and maintained adequate systems such as plumbing and heat. *See* Ind. Code § 32-31-8-5(1), (2), (4).

Here, the Court previously certified Plaintiffs' claims for declaratory relief, but denied certification of Plaintiffs' claims for damages on the ground that they would require individual factfinding. [Filing No. 176 at 7-8.] At this stage, however, it is appropriate to certify this as a common question for settlement because the Settlement Agreement itself obviates the need for any individualized determinations. Further, the Settlement Agreement and its process for allocating settlement funds precludes the need to engage in individualized factfinding for damages and provides a factor—length of time in the home—that accounts for the value of harm caused by having an allegedly uninhabitable house.

10

**Indiana Home Loan Practices Act.** Plaintiffs' Home Loan Practices Act claims are also susceptible to class-wide resolution. These claims turned on whether the terms of the RTB Agreements were "deceptive," Ind. Code. § 24-9-3-7(c)(3), *i.e.*, whether they contained "material misrepresentation[s]" or concealed "material information regarding the terms or conditions of the transaction," *id.* § 24-9-2-7(a)(1).

The Parties agree that the HLPA allegations turn on the consistent terms of the RTB Agreements themselves and thus involve questions susceptible to class-wide resolution for purposes of settlement. Here, again, the Court's earlier concern that resolution of these questions would also involve individualized factfinding, [Filing No. 176 at 9-10], are not relevant to class certification for settlement purposes. Finally, the distribution calculations in the Settlement Agreement account both for the operation of the HLPA statute of limitations, which could bar some class members' claims, and the value of the finance charges paid, which is the basis for calculating damages under the statute.

**Truth in Lending Act Claims**. Finally, the resolution of Plaintiffs' claims that Defendants failed to satisfy several TILA requirements would also be driven by common questions. "TILA specifically contemplates and allows class actions to address creditors' failures to comply with the statute and applicable regulations." *Kelen v. World Fin. Network Nat'l Bank*, 295 F.R.D. 87, 91 (S.D.N.Y. 2013) (citing 15 U.S.C. § 1640). Here, all RTB transactions used materially identical agreements and followed a virtually identical process. Accordingly, the Court certified three questions concerning whether Defendants violated TILA's pre-loan counseling, statutory disclosure, and appraisal requirements for class treatment.

The Parties agree that the remaining question—whether Defendants, as a policy and practice, made a reasonable and good faith determination based on verified and documented

information that RTB customers had a reasonable ability to repay the loan—also warrants certification as a common question in the settlement context and that the settlement obviates the need for the individual factfinding that prevented certification earlier in the litigation.

* * *

Plaintiffs' claims taken together present questions of law and fact that can be settled on a class-wide basis. These questions arise from materially identical agreements and uniform policies that apply to each class member so the "basic question[s]" for each claim are "common to the entire [] class[.]" *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 798 (7th Cir. 2013).

### ii.    Rule 23(a)(3) – Typicality

The Court has held, and the Parties agree, that the individual plaintiffs' claims are typical of the class. [*See* Filing No. 176 at 3.] Plaintiffs satisfy the typicality requirement of Rule 23(a)(3) that "the claims . . . of the representative parties are typical of the claims . . . of the class[.]" Fed. R. Civ. P. 23(a)(3). To establish typicality, the class representatives must "possess the same interest" as the class, *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982), and their injuries must arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory," *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008). That combination establishes "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2001).

Each of the class representatives' claims arises from the same course of conduct as the class-wide claims. Each class representative entered an RTB Agreement that is materially the same as those of every other class member, experienced comparable practices, and allegedly suffered comparable harm.

### iii.    Rule 23(a)(4) – Adequacy of Representation

The class representatives and undersigned counsel will also "fairly and adequately protect the interests of the class[.]" Fed. R. Civ. P. 23(a)(4). Adequacy of representation is comprised of two prongs: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chi. Police Ass'n v. Chi.*, 7 F.3d 584, 598 (7th Cir. 1993) (internal quotation marks omitted).

The Court has previously held that the class representatives, along with class counsel, can "fairly and adequately protect the interests of the class" as required by the Federal Rule of Civil Procedure 23(a)(4) and that "[n]othing in the plaintiffs' conduct suggests they won't continue to pursue the litigation vigorously on the class's behalf, nor does the record suggest class counsel isn't qualified, experienced, and able to conduct the litigation." [Filing No. 176 at 3-4.] The docket in this case bears this out—Plaintiffs initiated this action in May 2017, and since then it has been vigorously pursued with extensive discovery, depositions, and the filing of numerous motions.

Further, the interests of the class representatives are fully aligned with those of other class members and no "class members have antagonistic or conflicting claims." *Retired Chi. Police Ass'n*, 7 F.3d at 598. Class representatives have all been subjected to the same alleged practices. They have the same interest in recovering redress for their losses and ending the challenged practices.

### B.  Rule 23(b) Is Satisfied

Once the requirements of Rule 23(a) are satisfied, the Court should certify the class if it qualifies as any one of three types specified in the Rule. Fed. R. Civ. P. 23(b). Relevant here, Rule 23(b)(2) permits certification where the party opposing the class has acted or refused to act on grounds that apply generally to the class such that class-wide relief is appropriate, and Rule

13

23(b)(3) permits certification where a common question of law or fact predominates over any individual question and where a class action is a superior method for adjudicating those issues.

The Court previously certified Plaintiffs' claims for injunctive and declaratory relief under Rule 23(b)(2) but declined to certify Plaintiffs' claims for monetary relief based on the assertion that such relief would "require individual calculations." [Filing No. 176 at 13.] However, this concern is no longer relevant where the settlement creates an appropriate mechanism for making awards based on factors that would be considered by a jury assessing damages. Because the claims are not being litigated, the damage claims become incidental, meaning that they no longer serve as a bar to class certification. *Lemon v. Int'l Union of Operating Engineers, Local No. 139, AFL-CIO*, 216 F.3d 577, 581 (7th Cir. 2000). Plaintiffs and Defendants now seek certification of the claims under Rule 23(b)(3).

### i.   *Rule 23(b)(3) Certification is Proper for Settlement*

Certification is proper under Rule 23(b)(3) when (1) common questions of law or fact "predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). At settlement, three factors are pertinent to these inquiries: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; and (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. *Id*. The fourth factor identified by Rule 23(b)(3)—the likely difficulties in managing a class action—is not relevant with respect to a settlement-only class. *Smith v. Sprint Commc'ns Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case,

14

if tried, would present intractable management problems . . ." (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

"Common issues of fact and law predominate in particular when adjudication of questions of liability common to the class will achieve economies of time and expense." *Brown v. Cook Cnty.*, 332 F.R.D. 229, 243 (N.D. Ill. 2019) (quoting *Chi. Tchrs. Union, Local No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 444 (7th Cir. 2015)). "Considerable overlap exists between Rule 23(a)(2)'s commonality prerequisite and Rule 23(b)(3). Rule 23(a)(2) requires that common issues exist; Rule 23(b)(3) requires that they predominate." *Schneider v. Union Hosp., Inc.*, No. 2:15-CV-00204-JMS-DKL, 2016 WL 6037085, at *15 (S.D. Ind. Oct. 14, 2016) (internal citation omitted).

In this case, common questions clearly predominate. All the questions in this case center on Plaintiffs' claims that Defendants have uniform policies, practices, and form agreements. When liability turns primarily on the interpretation of form agreements and uniform policies, those common questions typically predominate over any individualized issues. *See Red Barn Motors, Inc. v. Nextgear Cap., Inc.*, 915 F.3d 1098, 1102 (7th Cir. 2019) (interpretation of form contract is common question that predominates); *Fonder v. Sheriff of Kankakee Cnty.*, No. 12-CV-2115, 2013 WL 5644754, at *7 (C.D. Ill. Oct. 15, 2013).

Further, the only individualized issues that prevented predominance at the original class certification stage dealt with individual damages calculations. *See* [Filing No. 176 at 13.] Because the Settlement Agreement itself provides a method to calculate damages, settlement makes these concerns irrelevant.

Additionally, all three factors relevant to settlement under Rule 23(b)(3) demonstrate both predominance and that settlement as a class is superior. Class members have little to no "interest[] in individually controlling the prosecution or defense of separate actions." Fed. R.

Civ. P. 23(b)(3)(A). This is the classic case where the class issues regarding Defendants' policies and practices, the applicability of certain statutes to Defendants, and the terms of the RTB Agreements "will be the most complex and costly to prove." *See Suchanek v. Sturm Foods*, 764 F.3d 750, 760 (7th Cir. 2014).

Moreover, most members of this class have limited economic resources, making it unlikely that they would be able to fruitfully litigate individual cases. *See* Fed. R. Civ. P. 23(b)(3)(B). Indeed, Plaintiffs are aware of no other class member who has brought an individual lawsuit against Rainbow.[2] Class certification "vindicate[s] . . . the rights of groups of people who individually would be without effective strength to bring their opponents into court at all," one of the primary purposes of Rule 23(b)(3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (internal quotation marks omitted). And fully resolving all issues concerning this policy in this forum is more desirable than fracturing it across potentially thousands of other state and federal lawsuits based on the happenstance of how cases challenging Rainbow's practices arise and potentially resulting in inconsistent legal and factual determinations. *See* Fed. R. Civ. P. 23(b)(3)(C).

**V.    The Class Settlement Agreement Should Be Approved**

The Parties have executed a settlement agreement that they ask the Court to preliminarily approve in order to allow the class representatives to give notice to the class and to allow any class members the opportunity to opt out or to raise and submit any objections for the Court to consider prior to final approval.

---

[2] The only other challenges to Rainbow's conduct of which Plaintiffs are aware arose (1) when the state Attorney General brought suit; (2) when a consumer obtained legal aid representation in an eviction action and filed counterclaims; and (3) in a *pro se* breach of contract claim. Neither the federal claims nor civil rights claims like those asserted here were raised in those actions.

16

As a general matter in this context, Federal Rule of Civil Procedure 23(e)(2) requires that a settlement agreement be fair, reasonable, and adequate. In order to grant preliminary approval of a settlement, a Court need only determine whether the proposed settlement is "within the range of possible approval" under that standard. *See, e.g.*, *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F.Supp.3d 1076, 1083, 1087 (N.D. Ill. 2021). That benchmark is easily satisfied in this case.

### A.  Legal Standard for Preliminary Approval

The Seventh Circuit's "longstanding guidance" instructs district courts to consider the following factors in conducting a fairness inquiry under Federal Rule of Civil Procedure Rule 23(e)(2): "(1) the strength of the case for plaintiffs on the merits, balanced against the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) [the] stage of the proceedings and amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982)). In doing so, a court must consider the proposed settlement in its entirety, rather than focusing on its individual components and must also "consider the facts in the light most favorable to the settlement." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) (quoting *Armstrong v. Bd. of Sch. Directors of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)).

### B.  Application of the Standard to Parties Settlement Agreement

Under these circumstances, the Court should preliminarily approve this settlement: each individual factor supports preliminary approval of the Settlement Agreement and, collectively, they overwhelmingly support its approval. The Parties negotiated this agreement after full discovery, extensive summary judgment briefing, and multiple comprehensive summary

judgment orders. As a result, the Parties have had the opportunity to fully assess the strengths and weaknesses of the case. Indeed, the Parties participated in extensive settlement discussions with Magistrate Judge Baker where the likelihood of success for each claim and defense in various possible scenarios was fully considered and discussed. *See Wong*, 773 F.3d at 864 (upholding settlement "reached through extensive arm's-length negotiations with an experienced third-party mediator, [in which] the parties contentiously litigated a motion to dismiss, and the district court considered the other factors above"). Furthermore, under the Settlement Agreement, each class member stands to receive an appropriate monetary award, where they would otherwise, at best, have an arduous path through litigation before receiving any possible award; Defendants have agreed to equitable relief; and Plaintiffs' attorneys have agreed to forgo all compensation for costs and fees. In these circumstances, not only is the settlement favorable compared to any alternative path of individual cases and fully uncertain appeals, none of the typical possible conflicts of interest exists. This Court should therefore grant the Parties' joint request for preliminary approval of the Settlement Agreement.

> **i.    *Strength of the Case for Plaintiffs on the Merits, Balanced Against the Settlement Offer***

The relative strength of Plaintiffs' case on the merits as compared to the settlement is the most important factor to consider in this analysis. *See e.g.*, *Isby*, 75 F.3d at 1199. In this case, outside of a class settlement, the class members' only opportunity to receive monetary compensation in this case would be to either (1) prevail at trial on the remaining class claim for declaratory relief *and* file and win subsequent individual cases for the damages available under their FHA claims, or (2) prevail on an appeal of an element of the Court's summary judgment decisions, defeat summary judgment on any claim revived by the appellate court, *and* get a favorable jury verdict on any claim revived by the appellate court. Furthermore, even if a

plaintiff successfully followed one of those paths, the factors a jury would consider in awarding any damages are the same factors that are used to distribute the funds under the class settlement.

To begin with, class members face significant obstacles to any recovery absent settlement.[3] As it stands, only one sub-part of one of the class members' claims remains active in this litigation: that of intentional discrimination under the Fair Housing Act. That sole class claim would only allow an award of a declaratory judgment, not damages; any class member seeking to collect damages would need to retain counsel, file a new case, and prevail at a subsequent trial for damages—assuming Plaintiffs succeeded on the declaratory judgment claim in the first place. That is a difficult and highly unpredictable path to a damages award for the active FHA claim.

The possibility of obtaining damages pursuant to any other claim is even more difficult or remote. All remaining claims have either been dismissed by this Court or not certified for class action litigation. [Filing No. 360 at 33-34.] In order for class members to receive any damages award for any such claim, Plaintiffs, after completing trial on their claim of intentional discrimination under the FHA, would need to appeal this Court's rulings on both class certification and summary judgment, prevail, defeat any subsequent defense motion for summary judgment on another ground after remand, and then successfully try the claims in front of a jury.

---

[3] While the Seventh Circuit has directed district courts to attempt to quantify the expected net expected value of litigation, such formal calculation is not necessary in this case, where the settlement accurately reflects the merits of the case and no suspicious circumstances surround it. *See Wong*, 773 F.3d at 864 (not necessary to quantify where no "suspicious circumstances" and the settlement "was reached through extensive arm's-length negotiations with an experienced third-party mediator, the parties contentiously litigated a motion to dismiss, and the district court considered the other factors above"); *see also Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 285 (7th Cir. 2017) ("We have also taught that the *Synfuel/Reynolds* evaluation of potential outcomes need not always be quantified, particularly where there are other reliable indications that the settlement reasonably reflects the relative merits of the case."). Further, here there are no claims that would provide for class damages that remain active. Only subsequently filed actions for damages or a successful appeal would allow for a damage award for any class member. Accordingly, the only fair quantification of damages currently available to any class member would be $0.

The road to any potential damages award via litigation is, at best, long and arduous. Even if class members were able to revive and successfully litigate any claim for damages, there is no guarantee their damages recovery after trial would exceed or even match the damages they will receive under the Settlement Agreement. Finally, any potential award from litigation must itself be discounted to account for the time and risk it would take to achieve it. *See In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("*In re AT & T*") ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for to most people, a dollar today is worth a great deal more than a dollar ten years from now." (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) (internal quotation marks and alterations omitted)).

A settlement outcome need not be superior to or even as good as a potential litigated outcome for this factor to support preliminary approval of a proposed settlement. *See, e.g.*, *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("The essence of a settlement is compromise. Each side gains the benefit if immediate resolution of the litigation and some measure of vindication for its position while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." (internal citations omitted)). Here, however, a complete failure to recover is a very real possibility for class members—indeed, it may be the most likely outcome, given the current posture of the case—and any recovery would require tremendous effort and expense. This factor clearly supports preliminary approval of the Settlement Agreement.

### ii. *Stage of the Proceedings, the Amount of Discovery Completed and the Complexity, Length, and Expense of Further Litigation*

An assessment of the stage of the proceedings, the amount of discovery completed to date, and the likelihood of complex, lengthy, and expensive litigation if the Parties do not settle also strongly support approving the Settlement Agreement. The Parties have reached this settlement after a full opportunity to assess the strengths and weaknesses of the case via both a full discovery period and the court's resolution of extensive summary judgment litigation. Furthermore, this case has already proven itself to be remarkably complex and, absent settlement, will require significant additional resources from the parties and the court system for its resolution.

First, as the Seventh Circuit notes, the "stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325. Here, settlement has been reached at a late stage in the proceedings, after the completion of discovery and multiple court orders on class certification and summary judgment, allowing the parties ample opportunity to assess and test the strength of the claims and defenses in this case. *See*, *e.g.*, *id.* ("As discussed above, settlement of this litigation was reached at a very late stage, after the issues had been clearly identified, liability and impact had been decided, and a massive record had been compiled. . . . [T]he litigation had progressed to a point at which counsel and the court were fully capable of evaluating the merits of plaintiffs' case and the probable course of future litigation.").

Second, despite the relatively late stage of the case at which settlement was reached, significant litigation would still occur if the parties pushed forward with the case. That litigation would undoubtedly be complex and expensive. As this Court has recognized, this case has already presented—before any claims have been tried—many complex legal issues, the resolution of which have required a significant expenditure of resources. *See* [Filing No. 360 at 1

21

("... after wading through 180 pages of briefs and over 1,000 pages of exhibits . . . ."); *id.* at 2 ("This case presents numerous complicated legal issues[.]").]

If the matter does not settle, the first step would be to complete a trial on the class FHA intentional discrimination claims and the individual Plaintiffs' state law claims. That process alone will be complex and expensive, requiring presentation of expert testimony and evidence regarding complicated legal and factual issues such as reverse redlining and residential habitability. Furthermore, the jury will have to consider the liability of the individual defendants. The relationship among Defendants and the potential liability of any one Defendant for other Defendants' conduct has been the subject of extensive summary judgment briefing and has not yet been fully resolved. Furthermore, a trial victory for Plaintiffs on their FHA claims would open the door for over two thousand individual damages lawsuits for discrimination against Defendants.

In addition, no matter the outcome of a trial, the Parties would undoubtedly proceed to costly and complex appellate litigation regarding the summary judgment and class certification orders and any additional issues arising from trial. Avoiding this significant, complex, and costly additional litigation weighs heavily in favor of preliminary approval of the settlement agreement.

### iii.   *The Amount of Opposition to the Settlement and the Reaction of Members of the Class to the Settlement*

Although the Court cannot yet fully consider class members' potential opposition and reaction to the settlement[4] because notice of the settlement has not yet been distributed, the Court should nonetheless find that these factors support preliminary approval of the Settlement Agreement. Counsel are not aware of any opposition to the general terms of settlement and

---

[4] The parties, again, consider two related factors—here, the amount of opposition to the settlement and the reaction members of the class to the settlement—collectively because they are very closely related.

individual Plaintiffs, who have participated directly in or have been regularly apprised of the progress of settlement negotiations, have approved its terms. Under these circumstances, the Court should consider these factors as supporting preliminary approval of the Settlement Agreement, pending the distribution of notice to the class. *See*, *e.g.*, *In re AT &T*, 270 F.R.D. at 349 ("While a district court should be hesitant to infer that the class supports a settlement merely because its members are silent, where that silence is coupled with other indicia of fairness, it provides further support for approval. Because the parties have not yet sent the notice, it is premature to fully assess this factor. The Court notes, however, that thus far only three potential class members have expressed displeasure with the proposed settlement agreement.") (internal citations, quotation marks, and alterations omitted) (quoting *Armstrong*, 616 F.2d at 326)).

### iv.  Opinion of Competent Counsel

All counsel in this case recommend settlement and, as discussed *supra*, do so advisedly, after having had ample opportunity to assess and test the claims in the context of complete discovery, substantial legal briefing, and multiple Court orders on the class allegations and substantive claims.

Further, as the extensive litigation to date demonstrates, counsel are competently and zealously litigating on behalf of their clients. It is certainly clear that counsel are not treating the case as an opportunity to generate legal fees for themselves—Plaintiffs' counsel are waiving all legal fees and costs as a part of the settlement agreement. *Cf. Isby*, 75 F.3d at 1200 (appropriate for court to rely on opinion of counsel that settlement was fair, reasonable, and adequate where counsel demonstrated high-quality representation and there was no reason to suspect that the settlement was tainted by collusion). Finally, the settlement negotiations proceeded very deliberately and thoughtfully with multiple sessions over multiple years and were overseen by and with input from Magistrate Judge Baker. As a result, the Court should place significant

weight on the strong recommendation of all counsel that the Court preliminarily approve the Settlement Agreement. *See, e.g.*, *Armstrong*, 616 F.2d at 325 ("While the court, of course, should not abdicate its responsibility to review a class action settlement merely because counsel support it, the court is entitled to rely heavily on the opinion of competent counsel. . . . Counsel for the plaintiff class and counsel for the defendants had been extensively involved in the litigation through virtually all of its history, giving the court ample time to evaluate their competence and the weight to be accorded their opinions.").

> ### v. *Additional Awards to Class Representatives and Declarants Are Fair and Equitable*

In the Settlement Agreement, the parties have agreed to incentive awards to the class representatives in the amount of $5,000 and to declarants who participated in the original class certification motion briefing in the amount of $2,500. Incentive awards are appropriate where such an award is necessary to induce a person to participate in the case. *See, e.g.*, *Billings v. Ryze Claim Solutions, LLC*, 2022 WL 2106138 (S.D. Ind. 2022) (finding service award of $15,000 to named plaintiff appropriate where plaintiff "was involved in the litigation – meeting with counsel and sitting for depositions") (citing *Cook v. Neidert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Here the class representatives were significantly involved in the extensive litigation, which proceeded to the eve of trial on two occasions. In addition, the declarants participated in the class certification briefing after reaching out to Plaintiffs and Plaintiffs' counsel by providing information regarding their experiences with Defendants, completing and signing declarations, and subjecting themselves to the possibility of being deposed. The agreed to incentive awards, which are likely to be smaller than the awards to many class members—under the structure of the agreement, the precise award amounts will be unknown until all claims have been submitted—are reasonable.

## VI.    **Proposed Notice Plan**

After certifying the class for settlement and determining that the proposed settlement is within the range of possible approval, the Court must then direct the Parties to issue notice "in a reasonable manner to all class members who would be bound by the proposed settlement agreement." *In re TikTok*, 565 F.Supp.3d at 1084 (quoting Fed. R. Civ. P. 23(e)(1)) (internal quotation marks omitted). Such notice "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort[,]" Fed. R. Civ. P. 23(c)(2)(B), and must be "designed to guaranty that those bound by the ruling in a class action were accorded their due process rights to notice and an opportunity to be heard[,]" *In re TikTok*, 565 F.Supp.3d at 1084 (quoting *Chaffee v. A&P Tea Co.*, Nos. 79 C 2735 and 79 C 3625, 1991 WL 5859, at *2 (N.D. Ill. Jan. 16, 1991)). The proposed notice plan satisfies that standard. Under the Settlement Agreement, Defendants will provide a list of class members, including their Social Security Numbers (to the extent known) and last known addresses. *See* [Filing No. 381-1 at 16.] The claims administrator will conduct a skip trace to confirm the current address for each class member and mail English and Spanish versions of the notice and claims form to each person. *Id.* Finally, Plaintiff Fair Housing Center of Indiana and Plaintiffs' counsel will include notice of the settlement on its website, with instructions for how to contact the claims administrator. The notice procedure is designed to reach as many class members as possible and easily exceeds the legal standard.

## VII.    **Conclusion**

For the above stated reasons, the Parties respectfully request that the Court issue an Order:

(1) Setting an expeditious preliminary fairness hearing at least seven days after the request;

(2) Certifying a class as defined above for the purposes of settlement;

(3) Granting preliminary approval of the Settlement Agreement;

(4) Setting a date for individuals to opt out of this Settlement Agreement that is 61 calendar days after the entry of the Final Approval Order, if there are no appeals; or, if there is any appeal of the Final Approval Order, the day after all appeals are finally resolved in favor of final approval of this Settlement Agreement;

(5) Setting a date to submit objections to this Settlement Agreement, that is 36 calendar days from the date the Notice of Settlement and Fairness Hearing is transmitted to the Class Members; and

(6) Setting a date for a Final Fairness Hearing for Final Approval of the Settlement before the Court at the earliest practicable date following the 60th day after the Preliminary Approval Hearing.[5]

Dated: January 6, 2023                     Respectfully submitted,

/s/ Reed Colfax                          /s/ Briana L. Clark
Reed Colfax (admitted *pro hac vice*)     Briana L. Clark
Zoila Hinson (admitted *pro hac vice*)    Michael A. Dorelli
Gabriel Diaz (admitted *pro hac vice*)    DENTONS BINGHAM GREENEBAUM LLP
RELMAN COLFAX PLLC                        2700 Market Tower
1225 19th St., NW, Suite 600              10 West Market Street
Washington, D.C. 20036                    Indianapolis, IN 46204
Tel: 202-728-1888                         Telephone: (317) 968-5418
Fax: 202-728-0848                         Facsimile: (317) 236-9907
                                          briana.clark@dentons.com
Russell B. Cate                           michael.dorelli@dentons.com
Matthew B. Keyes
RileyCate, LLC                            Andrew M. Pendexter
11 Municipal Drive Suite 200              Dentons, LLP
Fishers, IN 46038                         601 South Figueroa Street, Suite 2500

---

[5] Counsel for Defendants, Briana Clark, notes that she is counsel in a three-week trial scheduled before Judge Pratt beginning on February 21, 2023, Cause No. 1:15-CV-00111-TWP-MJD, and would request that the preliminary approval hearing be scheduled at least two weeks before or after the trial concludes, at the Court's convenience.

26

Tel: 317-588-2866                         Los Angeles, California 90017-5704
Fax: 317-564-0599                         Telephone: (213) 623-9300
                                          andrew.pendexter@dentons.com

*Counsel for Plaintiffs*
                                          *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2023, a copy of the foregoing Brief in Support of Joint Motion for Certification of Settlement Class and Preliminary Approval of Settlement Agreement was filed and served electronically on all counsel of record using the Court's CM/ECF system.

/s/ Reed Colfax
Reed Colfax

28