UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RAINBOW REALTY GROUP, INC., *et al.*, <br><br> Defendants. | Case No. 1:17-cv-01782-JMS-TAB |

**BRIEF IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT**

Plaintiffs and Class Representatives Mory Kamano, Norma Tejeda, Cordell Spencer, Maria Gaspar, and Franklin Paz ("Plaintiffs") and Defendants Rainbow Realty Group, Inc., Empire Holding Corp., Shore Waters Development, LLC, Alley Cat Trust, Sporting Trust, Sunflower Trust, Sunshine Trust, Redskins Trust, and James Hotka ("Defendants"), hereby jointly move the Court to grant final approval of the Parties' Settlement Agreement, [Filing No. 390-1].

**I.   Introduction**

After substantial litigation and extensive settlement discussions the Parties agreed to and executed a comprehensive Settlement Agreement resolving all claims raised by the Plaintiffs in the case, including the class claims. [Filing No. 390-1.][1] On January 19, 2023, the Court certified the proposed class for settlement and preliminarily approved the settlement agreement

---

[1] The Settlement Agreement filed as an exhibit to the Parties' Joint Motion for Final Approval of Settlement Agreement, [Filing No. 390-1], is the same agreement previously filed with the Court as Filing No. 386-1, but with the attached Claim Form and Claims Notice updated to include final dates as well as suggestions from the Claims Administrator. *See infra* at 9 n. 4.

scheduling a final approval hearing for May 11, 2023. [Filing No. 387.] Since the Court issued its order, the Parties have made every effort to ensure Class Members have been notified of their rights under the Settlement Agreement and received Claim Forms. Hundreds of Class Members have submitted Claim Forms to the Claims Administrator and none submitted an objection prior to the April 26, 2023, deadline.[2] The rate of responses is particularly high given that claimants still have over two months to submit claims. As previously found by the Court and demonstrated by the response of Class Members, the Settlement Agreement is fair, reasonable, and adequate.

Overall, the Settlement Agreement is fair, reasonable, and adequately compensates the class. The Agreement establishes a class fund of $525,000 that will be distributed to all Class Members who submit a claim. The distributions would be based on the same types of factors that would guide a jury's determination of appropriate damages. The resulting distribution amounts will be highly beneficial to the Class Members in light of the current status of the case, where no active class claims for damages remain. If the case were to continue, the Class Members could only obtain a monetary award if Plaintiffs prevailed on the remaining FHA class claim for declaratory relief and then also succeeded in subsequently filed, separate individual cases for damages, or if Plaintiffs successfully appealed previous Court opinions denying class certification or granting summary judgment against Plaintiffs. Neither scenario is probable at this stage, and each would undoubtedly require significant expenditures of time and resources. Even if Plaintiffs were able to proceed to trials with their damages claims, the very factors that would determine the extent of any awards are the same factors that will be used to determine their settlement distribution under the Agreement.

---

[2] Indeed, the single "objection" of which counsel is aware is the email sent to this Court's chambers by Ms. Brackett on April 28, 2023 – which was past the deadline for objections. *See infra* at 16 n. 8.

In addition, the Agreement provides for equitable relief that is equal to or exceeds the equitable relief sought in the case. Importantly, Plaintiffs' counsel has agreed to waive all of their fees in an effort to maximize the amounts that Class Members will receive from the settlement payment from Defendants.

In sum, the Settlement Agreement is a highly developed, comprehensive document that will ensure that all Class Members who seek to participate will receive a monetary distribution that they very likely would not receive if the case were to proceed in litigation. The high rate of participation and complete absence of timely objections from Class Members further support a finding that the Settlement Agreement should be approved.

## II.    Factual and Procedural Background

For over a decade, Defendants administered a Rent-to-Buy ("RTB") program in and around Marion County, Indiana. Between January 1, 2009, and the termination of the program in September 2019, more than two thousand customers entered into RTB Agreements with Defendants. With the exception of minor, non-substantive changes to the language of the operative agreements, the terms of the RTB Agreements were identical for all customers. In addition, uniform policies governed how Defendants administered the program.

On May 30, 2017, Plaintiffs commenced this action individually, and on behalf of a class of individuals who entered into RTB Agreements with Defendants on or after January 1, 2009, excluding individuals who successfully paid off their agreements, for alleged violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Indiana Home Loan Practices Act ("HLPA"), Indiana Code § 24-9-1-1 *et seq.*, and

3

Indiana Code § 32-31-8-5 (the "Civil Action").[3] On December 17, 2018, Plaintiffs filed a Third Amended Complaint, which is the operative complaint in this Civil Action, asserting the same claims. Discovery in the case was extensive, including the production of tens of thousands of pages of documents, the taking of more than 20 depositions, the exchange of multiple expert reports, and the filing of numerous motions. Motions practice followed.

On March 27, 2020, the Court granted in part and denied in part Plaintiffs' motion for class certification, certifying certain claims under the FHA, ECOA, TILA, the Indiana Home Loan Practices Act, and Indiana Code § 32-31-8-5, *et seq.*, pursuant to Federal Rule of Civil Procedure 23(b)(2). The Court defined the class as all people who entered into an RTB Agreement with Defendants for a residential property since the beginning of 2009, excluding those who successfully paid off their agreement.

On March 10, 2021, the Court granted Defendants' Motion for Partial Summary Judgment on Plaintiffs' class claims under the Indiana Home Loan Practices Act, and Indiana Code § 32-31-8-5, *et seq.* On April 13, 2021, the U.S. Court of Appeals for the Seventh Circuit denied Plaintiffs' petition for leave to appeal the class certification order pursuant to Federal Rule of Civil Procedure 23(f).

On August 12, 2022, the Court denied Plaintiffs' Motion for Partial Summary Judgment in its entirety and granted Defendants' cross-motion for summary judgment on Plaintiffs' class and individual claims pursuant to TILA, ECOA, and FHA (as to disparate impact claims). As a result of the Court's August 12, 2022 summary judgment ruling, Plaintiffs' remaining claims

---

[3] At the time of the filing of the original Complaint, the individual Plaintiffs were Nelly Espinoza, Mory Kamano, Marvin Martinez, and Norma Tejeda. On May 25, 2018, Ms. Espinoza and Mr. Martinez voluntarily dismissed their claims against Defendants pursuant to the terms of a settlement agreement. *See* [Filing No. 70.] Plaintiffs subsequently filed the Second Amended Complaint, which added Cordell Spencer as a Named Plaintiff, [Filing No. 53], and Third Amended Complaint, which added Maria Gaspar and Franklin Paz as Named Plaintiffs, [Filing No. 100].

included the Class Representatives' individual FHA disparate treatment claims for injunctive relief, declaratory relief, and damages, their Indiana statutory claims, and Class Members' FHA disparate treatment claims for declaratory and injunctive relief. [Filing No. 332.]

Plaintiffs subsequently filed a motion for reconsideration of the Court's summary judgment order and a motion to clarify the Court's summary judgment order. [Filing Nos. 337, 338.]

The Court granted in part and denied in part Plaintiffs' motion for reconsideration, but its decision did not revive any of Plaintiffs' dismissed claims. [Filing No. 360.] The Court also granted in part Plaintiffs' motion to clarify, concluding that individual Class Members' claims for damages will not be determined as part of this litigation and noting that it did not issue a summary judgment ruling regarding a subset of Plaintiffs' ECOA claims. *Id.* Plaintiffs subsequently voluntarily dismissed, with prejudice, any remaining claims they had under ECOA.

Accordingly, the status of Plaintiffs' class claims at the end of the motions practice were set forth by the Court as follows:

| CLAIM | CLASS CLAIM REMAINING? |
|---|---|
| Count I – Violation of ECOA – discrimination related to credit transactions and reverse redlining | NO – Dismissed |
| Count II – Violation of FHA<br>   1.   disparate treatment<br><br>   2.   disparate impact | 1. YES – injunctive, declaratory relief only<br>2. NO |
| Count III – Violation of TILA (Ability to Repay) | NO |
| Count IV – Violation of TILA (Pre-Loan Counseling) | NO |
| Count V – Violation of TILA (Mandatory Disclosure) | NO |
| Count VI – Violation of TILA (Appraisal) | NO |
| Count VII – Violation of Indiana Code § 32-31-8-5 | NO |
| Count VIII – Violation of Indiana Code § 24-9-3-7(c)<br>   1.   failing to share rent-to-buy program's success rate with buyers<br>   2.   misrepresentations on Sellers' Residential Real Estate Disclosure<br>   3.   standard contract terms are confusing, contradictory, and reviewed quickly at time of signing<br>   4.   provision regarding RTB nature of contract is deceptive | 1. NO<br>2. NO<br>3. NO<br>4. NO |

Throughout the case, the Parties engaged in extensive efforts to settle this matter. The Parties held telephonic and video settlement conferences with Magistrate Judge Tim Baker on May 25, 2020; October 6, 2021; and September 2, 2022, without success. After Plaintiffs' motion for reconsideration was denied, the Parties were able to reach an agreement with the assistance of Magistrate Judge Baker and negotiated, finalized, and executed a Settlement Agreement providing for class-based relief to all Class Members and individual relief to the individual plaintiffs for their individual claims.

On January 6, 2023, the Parties filed their Joint Motion for Certification of Settlement Class and Preliminary Approval of Settlement Agreement, attaching the proposed settlement agreement, Claim Form, and Claims Notice. [Filing No. 381.] After a telephonic status conference during which the Court required certain non-substantive changes to the Settlement Agreement, the Parties revised the terms of the Settlement Agreement in accordance with the

Court's requirements, notified the Court of these revisions, and attached the revised Settlement Agreement, Claim Form, and Claims Notice. [Filings No. 386, 386-1, 386-2.] On January 19, 2023, the Court granted approval of a settlement class defined as individuals who entered into an RTB Agreement with Defendants on or after January 1, 2009, excluding individuals who successfully paid off their agreements, granted preliminary approval of the settlement agreement, and set the date for the Final Fairness Hearing for Final Approval of the Settlement on May 11, 2023. [Filing No. 387.]

Pursuant to the terms of the Settlement Agreement, Defendants provided Plaintiffs' Counsel a list of all Class Members, including last known addresses, last known telephone numbers, known social security numbers, and all information necessary to determine their awards under the terms of the Settlement Agreement. Using that information, the Claims Administrator conducted a skip trace to determine, to the extent possible, the current address of each individual class member and mailed each class member a Claim Form and Claims Notice in English and Spanish no later than March 21, 2023. To date, more than 550 Class Members have submitted Claims Forms. The deadline to file claims is 61 days after the Court's final approval of the Settlement Agreement. The date by which Class Members were required to object to the Settlement Agreement was April 26, 2023, and no timely objections to the Settlement Agreement have been submitted. Accordingly, the Parties now seek final approval of the Settlement Agreement.

### III. Summary of Settlement Agreement

The Parties have negotiated a comprehensive Settlement Agreement that addresses all of the necessary issues to resolve all claims and process the class claims. Under the terms of the Agreement, Defendants have agreed to pay a total of $750,000 in settlement of all claims that

have or could have been raised in relation to the claims asserted by Plaintiffs. Of that amount, $525,000 will be paid into a settlement fund that will be used exclusively to pay claims made by Class Members, who are defined as "all individuals, including Class Representatives and Declarants, who entered into a RTB Agreement with any Defendant and/or any Individual Land Trust (as Seller), during the Class Period, excluding all persons who opt out of the Settlement and all persons who successfully paid off their RTB Agreement." [Filing No. 381-1 at 5.] For every class member who submits a claim, an "individual distribution basis" will be calculated based on the date the RTB agreement was signed, the number of months of the RTB agreement, and the finance charges paid and agreed to. *Id.* at 11-12. The individual distribution basis will then be used to calculate the pro rata share each class member will receive from the settlement fund. *Id.* In addition, each Class Representative will receive an additional $5,000 and each Declarant, who submitted a statement in support of the motion for class certification, will receive an additional $2,500. *Id.* at 10. The remaining $50,000 of the class settlement fund will be used for administrative costs. *Id.* at 9-10.

  The additional $175,000 will be used to compensate the individual plaintiffs, including the organizational plaintiff, for the damages sought pursuant to their individual claims. *Id.* at 12. The organizational plaintiff will receive $50,000 and each individual plaintiff will receive $25,000 in settlement of all the individual claims they had pleaded, including those that had survived summary judgment and were scheduled to be tried by jury. *Id.*

  Defendants further agree under the Settlement Agreement to (1) comply to the extent applicable with all the statutes that formed the basis of claims in the case; (2) ensure that officers, directors, management-level employees, and employees who interact with customers receive

comprehensive training about the fair housing laws, lending discrimination, and predatory lending; and (3) adopt a comprehensive fair housing policy. *Id.* at 14-15.

Plaintiffs' counsel will receive no compensation for any fees or costs expended in the litigation. *Id.* at 12.

The Settlement Agreement also set forth the process that the Parties have followed to notify Class Members regarding the settlement.[4] *Id.* at 19-20. Upon final approval, the Class Members' claims will be deemed released. *Id.* at 23-24.

The agreement further provides that the Parties will prepare a joint press release and otherwise will not reach out to or comment on the agreement to the media. And the Class Representatives and Class Members shall not post information about the agreement on social media or websites. *Id.* at 24-25.

### IV.     The Class Settlement Agreement Should Be Approved

The Parties ask the Court to grant final approval of the Settlement Agreement. Federal Rule of Civil Procedure 23(e)(2) requires that a class action settlement agreement be fair, reasonable, and adequate. As already recognized by the Court, the Settlement Agreement easily satisfies these criteria. The response of Class Members has confirmed the accuracy of that

---

[4] Based on the advice of the Claims Administrator, the Parties have agreed to minor modifications to the process outlined in the Settlement Agreement. In particular, the Parties agreed that if any Class Member completed a Claim Form but ultimately chose not to cash the check for damages, that portion of the damages would revert to Plaintiff Fair Housing Center of Central Indiana. In addition, phone support has been available 9:00 am to 5:30 pm, instead of 9:00 to 6:00 pm; the Claim Form and Claims Notice were sent to Class Members by regular U.S. mail, rather than certified mail; a pre-addressed and stamped envelope was included with each Claim Form and Claims Notice; and, if any opt-outs are submitted, the Claims Administrator will stamp the date of receipt on the opt out and save the envelope to track the postmark date, rather than stamping the postmark date on the opt out itself. Finally, under the terms of the Settlement Agreement, a Claim Form is timely if it is submitted within sixty-one calendar days of the Final Approval Order, if there are no appeals. Because the Parties cannot know when that date will be, the Claims Notice stated that the date by which a Class Member must submit a Claim Form is July 11, 2023, *i.e.*, sixty-one days after the Final Approval Hearing.

finding. Accordingly, the Court should grant final approval of the Parties' Settlement Agreement.

### A. Legal Standard for Approval

The Seventh Circuit's "longstanding guidance" instructs district courts to consider the following factors in conducting a fairness inquiry under Federal Rule of Civil Procedure Rule 23(e)(2): "(1) the strength of the case for plaintiffs on the merits, balanced against the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) [the] stage of the proceedings and amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982)). In doing so, a court must consider the proposed settlement in its entirety, rather than focusing on its individual components and must also "consider the facts in the light most favorable to the settlement." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) (quoting *Armstrong v. Bd. of Sch. Directors of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)).

### B. Application of the Standard to Parties' Settlement Agreement

Under these circumstances, the Court should approve this settlement: each individual factor supports approval of the Settlement Agreement and, collectively, they overwhelmingly support its approval. The Parties negotiated this agreement after full discovery, extensive summary judgment briefing, and multiple comprehensive summary judgment orders. As a result, the Parties have had the opportunity to fully assess the strengths and weaknesses of the case. Indeed, the Parties participated in extensive settlement discussions with Magistrate Judge Baker where the likelihood of success for each claim and defense in various possible scenarios was fully considered and discussed. *See Wong*, 773 F.3d at 864 (upholding settlement "reached

through extensive arm's-length negotiations with an experienced third-party mediator, [in which] the parties contentiously litigated a motion to dismiss, and the district court considered the other factors above"). Furthermore, under the Settlement Agreement, each class member stands to receive an appropriate monetary award, where they would otherwise, at best, have an arduous path through litigation before receiving any possible award; Defendants have agreed to equitable relief; and Plaintiffs' attorneys have agreed to forgo all compensation for costs and fees. In these circumstances, not only is the settlement favorable compared to any alternative path of individual cases and fully uncertain appeals, none of the typical possible conflicts of interest exists. In addition, the response of Class Members suggests significant support for the agreement; hundreds of Class Members have responded, and none submitted an objection before expiration of the time period during which Class Members were required to object. This Court should therefore grant the Parties' joint request for approval of the Settlement Agreement.

### i. *Strength of the Case for Plaintiffs on the Merits, Balanced Against the Settlement Offer*

The relative strength of Plaintiffs' case on the merits as compared to the amount of the settlement is the most important factor to consider in this analysis. *See e.g.*, *Wong*, 773 F.3d at 863; *Isby*, 75 F.3d at 1199; *see also* Fed. R. Civ. P. 23(e)(2)(C)(i). Outside of a class settlement, the Class Members' only opportunity to receive monetary compensation in this case would be to either (1) prevail at trial on the remaining class claim for declaratory relief *and* file and win subsequent individual cases for the damages available under their FHA claims, or (2) prevail on an appeal of an element of the Court's summary judgment decisions, defeat summary judgment on any claim revived by the appellate court, *and* get a favorable jury verdict on such claim. Even if a plaintiff successfully followed one of those paths, the factors a jury would consider in

11

awarding any damages are the same factors that are used to distribute the funds under the class settlement.

Class Members face significant obstacles to any recovery absent settlement.[5] As it stands, only one sub-part of one of the Class Members' claims remains active in this litigation: that of intentional discrimination under the Fair Housing Act. That sole class claim would only allow an award of a declaratory judgment, not damages; any class member seeking to collect damages would need to retain counsel, file a new case, and prevail at a subsequent trial for damages—assuming Plaintiffs succeeded on the declaratory judgment claim in the first place. That is a difficult and highly unpredictable path to a damages award for the active FHA claim.

The possibility of obtaining damages pursuant to any other claim is even more difficult or remote. All remaining claims have either been dismissed by this Court or not certified for class action litigation. [Filing No. 360 at 33-34.] In order for Class Members to receive any damages award for any such claim, Plaintiffs, after completing trial on their claim of intentional discrimination under the FHA, would need to appeal this Court's rulings on both class certification and summary judgment, prevail, defeat any subsequent defense motion for summary judgment on another ground after remand, and then successfully try the claims in front of a jury.[6]

---

[5] While the Seventh Circuit has directed district courts to attempt to quantify the net expected value of litigation, such formal calculation is not necessary in this case, where the settlement accurately reflects the merits of the case and no suspicious circumstances surround it. *See Wong*, 773 F.3d at 864 (not necessary to quantify where no "suspicious circumstances" and the settlement "was reached through extensive arm's-length negotiations with an experienced third-party mediator, the parties contentiously litigated a motion to dismiss, and the district court considered the other factors above"); *see also Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 285 (7th Cir. 2017) ("We have also taught that the *Synfuel/Reynolds* evaluation of potential outcomes need not always be quantified, particularly where there are other reliable indications that the settlement reasonably reflects the relative merits of the case."). Further, here there are no claims that would provide for class damages that remain active. Only subsequently filed actions for damages or a successful appeal would allow for a damage award for any class member. Accordingly, the only fair quantification of damages currently available to any class member would be $0.

[6] The only other possible means to obtain damages would be for individual Class Members to bring claims regarding the habitability of their homes. *See* Indiana Code § 32-31-8-5, -6. The statute of limitations for many of those claims has passed, however, and, as a factual matter, Class Members have not brought individual habitability claims against Defendants.

The road to any potential damages award via litigation is, at best, long and arduous. Even if Class Members were able to revive and successfully litigate any claim for damages, there is no guarantee their damages recovery after trial would exceed or even match the damages they will receive under the Settlement Agreement. Finally, any potential award from litigation must itself be discounted to account for the time and risk it would take to achieve it. *See In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("*In re AT & T*") ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for to most people, a dollar today is worth a great deal more than a dollar ten years from now." (internal quotation marks and alterations omitted)); *see also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583 (N.D. Ill. 2011) ("[A] major benefit of the settlement is that Class Members may obtain these benefits much more quickly than had the parties not settled.").

A settlement outcome need not be superior to or even as good as a potential litigated outcome for this factor to support approval of a proposed settlement. *See, e.g., E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("The essence of a settlement is compromise. Each side gains the benefit of immediate resolution of the litigation and some measure of vindication for its position while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." (internal citations omitted)). Here, however, a complete failure to recover is a very real possibility for Class Members—indeed, it may be the most likely outcome, given the current posture of the case—and any recovery would require tremendous effort and expense. This factor clearly supports approval of the Settlement Agreement.

13

### ii. *Stage of the Proceedings, the Amount of Discovery Completed and the Complexity, Length, and Expense of Further Litigation*

An assessment of the stage of the proceedings, the amount of discovery completed to date and the likelihood of complex, lengthy, and expensive litigation if the Parties do not settle also strongly support approving the Settlement Agreement. The Parties have reached this settlement after a full opportunity to assess the strengths and weaknesses of the case via both a full discovery period and the Court's resolution of extensive summary judgment litigation. Furthermore, this case has already proven itself to be remarkably complex and, absent settlement, will require significant additional resources from the parties and the court system for its resolution.

First, as the Seventh Circuit notes, the "stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325. Here, settlement has been reached at a late stage in the proceedings, after the completion of discovery and multiple court orders on class certification and summary judgment, allowing the parties ample opportunity to assess and test the strength of the claims and defenses in this case. *See, e.g., id.* ("As discussed above, settlement of this litigation was reached at a very late stage, after the issues had been clearly identified, liability and impact had been decided, and a massive record had been compiled. . . . [T]he litigation had progressed to a point at which counsel and the court were fully capable of evaluating the merits of plaintiffs' case and the probable course of future litigation.").

Second, despite the relatively late stage of the case at which settlement was reached, significant litigation would still occur if the parties pushed forward with the case. That litigation would undoubtedly be complex and expensive. As this Court has recognized, this case has already presented—before any claims have been tried—many complex legal issues, the

14

resolution of which have required a significant expenditure of resources. *See* [Filing No. 360 at 2 ("This case presents numerous complicated legal issues[.]").]

If the matter does not settle, the first step would be to complete a trial on the class FHA intentional discrimination claims and the individual Plaintiffs' state law claims. That process alone will be complex and expensive, requiring presentation of expert testimony and evidence regarding complicated legal and factual issues such as reverse redlining and residential habitability. The jury would also have to consider the liability of the individual Defendants. The relationship among Defendants and the potential liability of any one Defendant for other Defendants' conduct has been the subject of extensive summary judgment briefing and has not yet been fully resolved. Furthermore, a trial victory for Plaintiffs on their FHA claims would open the door for over two thousand individual damages lawsuits for discrimination against Defendants.

In addition, no matter the outcome of a trial, the Parties would undoubtedly proceed to costly and complex appellate litigation regarding the summary judgment and class certification orders and any additional issues arising from trial. Avoiding this significant, complex, and costly additional litigation weighs heavily in favor of approval of the settlement agreement.

### iii. The Amount of Opposition to the Settlement and the Reaction of Members of the Class to the Settlement

Class Members' response to the notice reflects that these factors support final approval of the settlement agreement.[7] To date, more than 550 Class Members have submitted Claim Forms. Given the timing of the notice and the ample time remaining for Class Members to submit forms, this is a high response rate. No class member has submitted a timely objection to the Settlement

---

[7] The parties, again, consider two related factors—here, the amount of opposition to the settlement and the reaction members of the class to the settlement—collectively because they are very closely related.

Agreement, which plainly weighs in favor of approval.[8] *See, e.g.*, *Parker v. Villa of Greenfield LLC*, No. 20-cv01696, 2022 WL 16659191, at *4 (E.D. Wis. Nov. 3, 2022) (noting absence of objections and approving settlement); *Snyder v. Ocwen Loan Servicing, LLC*, No. 16 C 8677, 2019 WL 2103379, at *5 (N.D. Ill. May 14, 2019) (3 objections out of 270,000 Class Members favors approval of settlement).

The significant engagement of Class Members and overwhelming positive response to the agreement further confirms that the Settlement Agreement treats Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). Class Representatives and Declarants who actively participated in the litigation will receive reasonable payments in addition to their shares of the class award; otherwise, the awards payable to Class Members will be based on the date the RTB agreement was signed (and, thus, whether certain claims would have been available to Class Members), the number of months of the RTB agreement, and the finance charges paid and agreed to.

### iv. Opinion of Competent Counsel

All counsel in this case recommend settlement and, as discussed *supra*, do so after having had ample opportunity to assess and test the claims in the context of complete discovery,

---

[8] On Friday April 28, 2023, the date that the instant motion was due, the Court received and forwarded an e-mail from a purported class member discussing the alleged difficulties she encountered and harms she suffered while living in a Rainbow home. While the e-mail writer sent her e-mail to the Court after the April 26, 2023 deadline for objections, the parties nonetheless address her concerns here, as they appear to be based on factual misunderstandings that do not undermine the propriety of the Settlement Agreement. She wrote that, based on the "mathematical equation" contained in the notice, each member "was to receive about $30.00 to $100 each" while "Amy Nelson would receive 50,000 compensation." First, that calculation is not consistent with the Claims Notice. It is impossible to calculate what a given class member will receive without knowing the final number of submitted claim forms but even if every class member were to submit a claim form, which they will not, the average payout will be 2-3 times more than even the highest number presented by the e-mail writer. Second, Amy Nelson, Executive Director of the Fair Housing Center of Central Indiana, will not personally receive any portion of the settlement funds; FHCCI, as an organization, will receive a portion of the settlement, reflecting the organizations' damages and its efforts in investigating and participating in this litigation. *See infra* at 17-18. More importantly, however, the terms of the Settlement Agreement are appropriate relative to the strength of the case, given the results of all litigation efforts to date. *See supra* at 11-15. The letter writer may opt out if she chooses, but her concerns should not alter the Court's analysis—approval of the Settlement Agreement remains just as appropriate if not more appropriate now than it was when the Court preliminarily approved it.

substantial legal briefing, and multiple Court orders on the class allegations and substantive claims.

Further, as the extensive litigation to date demonstrates, counsel have competently and zealously litigated on behalf of their clients and the Class Representatives have more than adequately represented the class. It is also clear that counsel are not treating the settlement as an opportunity to generate legal fees for themselves—Plaintiffs' counsel are waiving all legal fees and costs as a part of the settlement agreement. *Cf. Isby*, 75 F.3d at 1200 (appropriate for court to rely on opinion of counsel that settlement was fair, reasonable, and adequate where counsel demonstrated high-quality representation and there was no reason to suspect that the settlement was tainted by collusion). Finally, the settlement negotiations were negotiated at arm's length, proceeded very deliberately and thoughtfully with multiple sessions over multiple years, and were overseen by and with input from Magistrate Judge Baker. As a result, the Court should place significant weight on the strong recommendation of all counsel that the Court approve the Settlement Agreement. *See, e.g.*, *Armstrong*, 616 F.2d at 325 ("While the court, of course, should not abdicate its responsibility to review a class action settlement merely because counsel support it, the court is entitled to rely heavily on the opinion of competent counsel. . . . Counsel for the plaintiff class and counsel for the defendants had been extensively involved in the litigation through virtually all of its history, giving the court ample time to evaluate their competence and the weight to be accorded their opinions."); *see also* Fed. R. Civ. P. 23(e)(2)(A)-(B).

### v. *Additional Awards to Class Representatives and Declarants Are Fair and Equitable*

In the Settlement Agreement, the Parties have agreed to incentive awards to the Class Representatives in the amount of $5,000 and to Declarants who participated in the original class certification motion briefing in the amount of $2,500. Incentive awards are appropriate where

17

such an award is necessary to induce a person to participate in the case. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Factors relevant to the Court's determination of whether an award is warranted include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* (approving $25,000 incentive award); *see, e.g.*, *Billings v. Ryze Claim Solutions, LLC*, 2022 WL 2106138 (S.D. Ind. 2022) (finding service award of $15,000 to named plaintiff appropriate where plaintiff "was involved in the litigation – meeting with counsel and sitting for depositions"); *Shah v. Zimmer Biomet Holdings, Inc.*, No. 3:16-cv-815, 2020 WL 5627171, at *8-*9 (N.D. Ind. Sept. 18, 2020) (approving incentive award of $15,000 because class representatives sat for depositions). Here the Class Representatives were significantly involved in the extensive litigation, which proceeded to the eve of trial on two occasions, including sitting for depositions, preparing discovery responses, documenting the state of their homes, preparing for trial, and providing documents. In addition, the Declarants participated in the class certification briefing after reaching out to Plaintiffs and Plaintiffs' counsel by providing information regarding their experiences with Defendants, completing and signing declarations, and subjecting themselves to the possibility of being deposed. The modest incentive awards are thus reasonable under the circumstances.

## V. Conclusion

For the above stated reasons, the Parties respectfully request that the Court issue an Order granting final approval of the Settlement Agreement.

Dated: April 28, 2023                                     Respectfully submitted,

/s/ Reed Colfax                                           /s/ Briana L. Clark
Reed Colfax (admitted *pro hac vice*)                     Briana L. Clark

| | |
|---|---|
| Zoila Hinson (admitted *pro hac vice*) | Michael A. Dorelli |
| Gabriel Diaz (admitted *pro hac vice*) | DENTONS BINGHAM GREENEBAUM LLP |
| RELMAN COLFAX PLLC | 2700 Market Tower |
| 1225 19th St., NW, Suite 600 | 10 West Market Street |
| Washington, D.C. 20036 | Indianapolis, IN 46204 |
| Tel: 202-728-1888 | Telephone: (317) 968-5418 |
| Fax: 202-728-0848 | Facsimile: (317) 236-9907 |
| | briana.clark@dentons.com |
| | michael.dorelli@dentons.com |
| Russell B. Cate | |
| Matthew B. Keyes | Andrew M. Pendexter |
| RileyCate, LLC | Dentons, LLP |
| 11 Municipal Drive Suite 200 | 601 South Figueroa Street, Suite 2500 |
| Fishers, IN 46038 | Los Angeles, California 90017-5704 |
| Tel: 317-588-2866 | Telephone: (213) 623-9300 |
| Fax: 317-564-0599 | andrew.pendexter@dentons.com |
| | |
| *Counsel for Plaintiffs* | *Counsel for Defendants* |

19

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2023, a copy of the foregoing Brief in Support of Joint Motion for Final Approval of Settlement Agreement was filed and served electronically on all counsel of record using the Court's CM/ECF system.

/s/ Reed Colfax
Reed Colfax